Robert Edward **LIPSCOMB**, Petitioner-
Appellant,

v.

Lewis B. **STEVENS**, Warden, Respondent-
Appellee.

No. 15842.

United States Court of Appeals
Sixth Circuit.

Aug. 4, 1965.

---

Thomas Khederian, Detroit, Mich.,
Robert Edward Lipscomb, in pro. per., on
brief, for appellant.

William H. Merrill, Chief Asst. U. S.
Atty., Detroit, Mich., Lawrence Gubow,
U. S. Atty., Detroit, Mich., on brief, for
appellee.

Before MILLER and O'SULLIVAN,
Circuit Judges, and McALLISTER, Sen-
ior Circuit Judge.

McALLISTER, Senior Circuit Judge.

This is an appeal from a judgment
entered by the district court denying ap-
pellant's petition for a writ of habeas
corpus.

Appellant contends that the federal
government transferred him from its cus-
tody to a state prison while he was serv-
ing a sentence imposed by a federal
court, and that such a transfer divested
or waived any further federal jurisdic-
tion over him.

Appellee claims that the federal gov-
ernment transferred appellant to a state
prison in order that he could serve con-
currently a sentence imposed by the state,
and a sentence imposed by the federal
government; that the transfer of appel-
lant to the state prison was made on the
explicit written understanding that the
federal government would take appellant
into custody for service of the remainder
of his federal sentence after he had
served the state sentence; that no rights
of any kind were lost by appellant
through the aforementioned federal and
state action; that, on the other hand, it
was clearly to appellant's advantage to
serve the state sentence concurrently
with the federal sentence, rather than to
serve the state sentence after he had
served the federal sentence; and that
under Title 18, U.S.C.A. § 4082, the
transfer of appellant by the federal gov-
ernment from a federal penitentiary to a
state prison was a proper exercise of
power of the federal government, and
did not constitute a waiver of any further
jurisdiction of the federal government
over appellant.

The background of the case is as fol-
lows: Robert Edward Lipscomb, appel-
lant herein, was convicted in Michigan
of unlawfully driving away in an auto-
mobile, and sentenced in 1938 to a term
of one to five years in a Michigan state
prison. He served eleven months of the
sentence and was then paroled for a year.
While he was on parole, he was con-
victed in July 1940 of the offense of un-
lawfully driving away in an automobile,
and received a sentence of four and one-

half to five years in a Michigan state prison. He was further convicted in August 1940 of armed robbery and received a sentence of fifteen to thirty years in a Michigan state prison for that offense. On January 31, 1950, he was paroled on a four-year parole. However, shortly thereafter he violated his parole and could not be found. A parole violation warrant for him was issued in Michigan on February 15, 1951.

The next notice of his whereabouts which was received in Michigan, was that he had been convicted of the federal crime of passing counterfeit federal reserve notes, and received a sentence of twenty-five years, which he was serving at the federal penitentiary at Leavenworth, Kansas. Upon receipt of this information, a second parole violation warrant was sought by authorities in Michigan and filed with the Warden at Leavenworth. At that time, the Michigan authorities received a letter dated December 5, 1962, from Mr. James V. Bennett, Director of Federal Prisons, stating that appellant was not subject to parole for the federal offense until December 1968; and Mr. Bennett suggested that the State of Michigan take appellant for service of his sentence in Michigan. The state authorities, however, were uncertain about the situation and wrote Mr. Bennett that there was no way of predicting what the Michigan Parole Board might do in the case, and that appellant might conceivably be discharged by the Michigan Board in 1965, leaving three years of the federal sentence unserved. To this communication, Mr. Bennett replied that he could understand the reluctance of the Michigan authorities to accept the return of appellant, but that he would appreciate it very much "even though it might develop it would be necessary for us to return the man to our [federal] custody three years hence." Mr. Bennett also mentioned that the proposed transfer was suggested by Chief Judge Harper of the United States District Court in St. Louis, Missouri, and that he would like to cooperate, if possible, with the court.

Mr. Bennett had previously informed the Director of Michigan Corrections that Judge Harper had suggested that the federal authorities explore the possibility of arranging for Lipscomb to serve the balance of his federal sentence and his Michigan parole violation term concurrently, and had stated it was his understanding that it would be necessary to transfer appellant to a Michigan prison in order to make concurrent service of his state and federal terms possible.

Further, Mr. Bennett wrote, on January 3, 1963:

"There is a further consideration which is involved. As you probably have heard, we are in the process of 'phasing out' the Alcatraz Institution, and you can well appreciate the problems which are involved in having to try to absorb this population in our other institutions.

"It would be helpful to us if Lipscomb might be in a Michigan Institution, if only for a relatively short time during this period of transition in our program."

To this letter, Mr. Harrison, for the Michigan authorities, replied on January 9 to Mr. Bennett:

"We will accept this man at the State Prison at Southern Michigan. I assume that you will file your detainer with the authorities at that institution.

"Will you kindly let the officials at the State Prison of Southern Michigan, at Jackson, know when you plan to deliver this man."

On January 14, 1963, Mr. Bennett, as Director of Federal Prisons, entered an Order of Transfer of appellant Lipscomb from the federal prison to the Jackson State Prison, in which it was stated:

"To the Warden, United States Penitentiary, Alcatraz, California.

"WHEREAS, in accordance with the authority contained in Title 18, sections 4082, 4085, and 4125, U.S. Code, the Attorney General by the Director of the Bureau of Prisons has ordered the transfer of Robert

Edward Lipscomb from the United States Penitentiary, Alcatraz, California, to the State Prison of Southern Michigan, Jackson, Michigan.

"NOW, THEREFORE, you, the above-named officer, are hereby authorized and directed to execute this order by causing the removal of said prisoner, together with the original writ of commitment and other official papers as above ordered and to incur the necessary expense and include it in your regular accounts.

"And you, the warden, superintendent, or official in charge of the institution in which the prisoner is now confined, are hereby authorized to deliver the prisoner in accordance with the above order; and you, the warden, superintendent, or official in charge of the institution to which the transfer has been ordered, are hereby authorized and directed to receive the said prisoner into your custody and him to safely keep until the expiration of his sentence or until he is otherwise discharged according to law.

By direction of the Attorney General, James V. Bennett, Director, Bureau of Prisons."

Typed on the bottom of the Order of Transfer was this statement:

"For concurrent service of state and federal sentences."

Accordingly, appellant was returned to the Jackson, Michigan, prison on April 12, 1963, and the supervisor of records at Jackson sent a memorandum to the proper authority in the Michigan prison stating that appellant "is wanted by the United States Marshal per order of Bureau of Prisons of Washington, D. C."

On June 17, 1963, the Chairman of the Michigan Parole Board wrote to Mr. Bennett, Director of Federal Prisons, the following letter:

"On May 16, 1963, we wrote you as follows:

" 'Our Parole Board interviewed [appellant] on April 19, 1963 as a parole violator and felt some clarification as to his Federal status was necessary before issuing an order. We would like to know if the subject had been seen, or is to be seen by your Parole Board. Would you feel, in accordance with your correspondence with Director Harrison of December 5, '62, that he can now be returned to you for further service? He has many questions as to his status, and until we have some clarification of it, we feel unable to deal appropriately with this case. We will hold any decision regarding him in abeyance until we hear from you. As we advise, we are unable to come to a decision in this case until we hear from you.' "

To this letter, Mr. Bennett wrote the Chairman of the Michigan Parole Board, on July 30, 1963, as follows:

"We have your letter of July 23 in which you advise that Eli DePaunto, also known as Robert Edward Lipscomb, who was transferred to Michigan custody earlier this year for a concurrent service of State and Federal terms has been granted parole from his Michigan sentence.

"We will, therefore, ask that the United States Marshal for the Western District of Michigan to assume custody of Lipscomb and transfer him to one of our institutions.

"We would, however, appreciate being advised of the date on which he is to be released so that we may advise the Marshal.

"We should also appreciate being advised whether Lipscomb will be continued under your supervision at such time as he is released from Federal custody, or if you plan to return him at that time.

"Thank you for your cooperation."

On July 15, 1963, the Parole Executive of the United States Board of Parole,

wrote the Michigan authorities as follows:

"Reference is made to your letter of June 17 addressed to the director of the Federal Bureau of Prisons, which has been referred to this office for a reply.

"Please be advised that if subject is released by you prior to January 18, 1968, the Federal Bureau of Prisons will take him into custody.

"Subject has been seen by our Board and has been denied parole."

On July 19, 1963, an order was entered by the Michigan Parole Board with regard to appellant, as follows:

"Parole to Federal detainer only."

A certificate was thereafter issued on August 3, 1963, by the Michigan authorities, with regard to appellant, stating the following:

"Subject is being released to the U. S. Marshal, Detroit. This parole is null and void if not called for by the U. S. Marshal."

On August 14, 1963, the Assistant Director of Federal Prisons in Washington, D. C., wrote the Michigan prison authorities the following letter in regard to appellant:

"The above Federal prisoner has been transferred to your Institution in order that he may serve his Federal and State sentences concurrently. A copy of our sentence data record is attached showing the release date applicable to the Federal sentence.

"It is understood that no charge will be made to the Federal Government during the time that he is serving his State sentence. If the State sentence expires before the Federal sentence has been served, the case should be brought to the attention of this office for transfer or other disposition.

"Please place a detainer against him in order that he may be retained in custody should he be released by the State before he is eligible for release on his Federal term.

"In the event of death, escape, so on, notify U. S. Marshal."

The State of Michigan thereafter released appellant to the custody of the federal authorities. He was "picked up" by the United States Marshal at the Jackson Prison, and, in federal custody, taken to the Federal Correctional Institution at Milan, Michigan.

■ It is admitted that after appellant was transferred by the federal authorities to the Michigan state prison, he completed the service of the sentence imposed upon him by the Michigan court. No rights of any kind were lost by appellant through the aforementioned federal and state action. It was clearly to appellant's advantage to serve his Michigan sentence concurrently with his federal sentence, rather than serving it after the completion of service of his federal sentence.

Title 18 U.S.C.A. § 4082, insofar as here applicable, provides as follows:

"Persons convicted of an offense against the United States shall be committed, for such terms of imprisonment as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences shall be served.

"The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the Federal Government or otherwise, or whether within or without the judicial district in which the person was convicted.

"The Attorney General may order any inmate transferred from one institution to another."

■ The above section clearly provides the authority for a transfer of appellant from the federal prison to the state prison. There was no waiver of further jurisdiction by the federal government over appellant by reason of such

transfer. The transfer was explicitly made in accordance with the above provision of the statute, although other statutory provisions were mentioned in the official order of transfer to the state prison. All of the various communications between the federal authorities and the state authorities emphasized that after appellant had served the state sentence concurrently with the federal sentence, the federal authorities would reclaim appellant for the service of the balance of the federal sentence.

Appellant, in his contention, relies upon Jones in Rayborn, 346 S.W.2d 743 (Court of Appeals of Kentucky). In that case, a prisoner, against his will, was transferred from a state to a federal penitentiary beyond the jurisdiction of the state, before expiration of his state sentence, apparently for the purpose of serving the remainder of his term in a prison not authorized for such service under the state statutes; and he was thereafter returned to the state and reimprisoned as a fugitive from justice, when admittedly he was not such a fugitive. At the time he was reimprisoned he had served sufficient time to make him eligible for parole under the state law. The Court of Appeals held that the release of the prisoner by the state to the federal authorities, under such circumstances, was a waiver by the state to subject the prisoner to further punishment. The foregoing adjudication we find to be inapplicable to the present case. Here, the government, by virtue of the provisions of the statute above quoted, had the undoubted right to designate the place of confinement of appellant for service of the federal sentence, either in a federal prison, or in a state prison, and it could order the transfer of any federal prisoner from one institution to another. The federal government never lost jurisdiction over appellant. He was serving, in the state prison, his federal sentence at the same time he was serving his state sentence. There was no prejudice to him through any interruption of his sentence. The service of the concurrent sentences was to appellant's ad-

vantage from every aspect. There was no arbitrary action by either the state or the federal government in disregard of any of appellant's rights.

In accordance with the foregoing, the judgment of Judge Kaess is affirmed.