Michael **THIGPEN**, Plaintiff-Appellant,

v.

**UNITED STATES PAROLE COMMISSION**, Defendant-Appellee.

No. 82–1783.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1983.

Decided May 26, 1983.

Mary A. Martin, Chicago, Ill., for plaintiff-appellant.

Michael S. O'Connell, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant-appellee.

Before BAUER and WOOD, Circuit Judges, and EVANS, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal presents the question of whether the United States Parole Commission may withdraw—and hold in abeyance pending the outcome of related state criminal charges—a parole violator warrant where that warrant was previously executed and resulted in a parole revocation hearing whose result was subsequently nullified due to the alleged violator's constitutional challenge to that hearing. We agree

with the district court that, in such circumstances, the Parole Commission has the authority to withdraw the originally executed warrant and hold it in abeyance until a proper revocation hearing can be held after state charges are disposed of.

## I.

On September 11, 1974, plaintiff-appellant Michael Thigpen was sentenced to two years of incarceration and three years of special parole after pleading guilty to a federal charge of distribution of narcotics. While on parole, Thigpen was arrested on May 11, 1977 in Illinois for armed robbery and unlawful use of weapons. On May 31, 1977, the Commission issued a parole violator warrant against Thigpen. The warrant and warrant application listing the state charges were forwarded to the United States Marshal in Chicago, with instructions to hold them in abeyance pending the disposition of the state charges.

Thigpen failed to appear in court on the state charges. Consequently, on April 5, 1978, the Commission issued a supplemental warrant, listing in addition the new offenses of failure to appear and failure to report change of address, and forwarded it to Chicago. On November 19, 1980, Thigpen was arrested by the United States Marshal in Chicago.

On December 29, 1980, a preliminary hearing was held; at that hearing, the Regional Commissioner found probable cause to believe that Thigpen had violated the conditions of his special parole. A revocation hearing was held on February 10, 1981. As a result of the revocation hearing, the Commission decided that Thigpen's special parole should be revoked. Thigpen appealed that hearing decision to the Regional Commissioner, who affirmed the decision on June 9, 1981.

Contemporaneously, on March 20, 1981, Thigpen had filed a petition for a writ of habeas corpus in federal district court alleg-

* The Honorable Terence T. Evans, District Judge of the Eastern District of Wisconsin, is sitting    by designation.

ing that the Commission had unlawfully revoked his parole by conducting the February, 1981 parole revocation hearing without providing him assistance of counsel. On May 19, 1981, the habeas corpus action was dismissed pursuant to a stipulation of the parties that Thigpen would be conditionally reinstated to parole supervision and released to state authorities for resolution of the state charges. The stipulation also provided that a new revocation hearing would be held after disposition of the state charges. The stipulation agreement was formalized in two "Notices of Action" issued by the Commission on May 5, 1981. The Notices of Action were attached to the stipulation. The first Notice of Action provided:

> ... Release [petitioner] and conditionally reinstate [him] to supervision from custody of warranted [sic] dated May 31, 1977. Said warrant to be placed as a detainer pending resolution of local charges; Armed Robbery, Unlawful use of a weapon and Failure to Appear.

The second Notice of Action provided:

> Reopen for a new revocation hearing on all charges after disposition in Cook County, Illinois Courts on charges of Armed robbery, Unlawful use of a weapon and Failure to appear.

Pursuant to these Notices of Action, the original violator warrant issued in May, 1977 was withdrawn and held in abeyance pending the resolution of state charges. On May 20, 1981, Thigpen was turned over to state authorities. On September 14, 1981, Thigpen pleaded guilty to the state charges and was sentenced to three years of incarceration.

Thigpen then filed this action on January 8, 1982, seeking a writ of mandamus and a preliminary injunction compelling the Commission to withdraw the detainer and underlying parole violator warrant it had placed against him, enjoining the Commission from holding another parole revocation hearing, and enforcing the Commission's Notices of Action as final. Chiefly, he argued that the detainer was invalid because the procedures followed by the Commission violated his due process rights under *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) as codified in 18 U.S.C. §§ 4213 and 4214. He also alleged that the May, 1981 Notice of Action conditionally reinstating him to parole supervision was the final parole revocation decision required under 18 U.S.C. § 4214(d) and that, even if it were not, it should be construed as such because the Commission lacked authority under 18 U.S.C. §§ 4213, 4214 to conduct a second and deferred revocation hearing.

In April, 1982, the district court denied Thigpen's motion for summary judgment and preliminary injunction, and granted summary judgment in favor of the Parole Commission. The district court reasoned first that the May, 1981 "Notices of Action" were by their very terms not "final" dispositions of the parole revocation process since the outcome—*i.e.* the reinstatement—was expressly made "conditional." Second, the district court rejected Thigpen's argument that the deferral of a subsequent revocation hearing after the previously abortive one was unlawful; it reasoned that such a procedure conforms to the flexibility mandated under the Parole Commission and Reorganization Act of 1976 and has been approved in an analogous case, *Franklin v. Fenton,* 642 F.2d 760 (3d Cir.1980). From this disposition by the district court, plaintiff appeals.

On May 19, 1982, after serving his state term, Thigpen was released to federal custody pursuant to the underlying warrant and detainer. On June 7, 1982, and pursuant to the May, 1981 Notices of Action, the Parole Commission held the new revocation hearing which Thigpen maintained was illegal. On June 24, 1982, as a result of the new revocation hearing, the Commission revoked Thigpen's parole. Thigpen then returned to federal custody to serve a parole violator term.

## II.

Thigpen primarily contends on appeal that the district court erred in holding that, even though a warrant had been executed against him, the Parole Commission was

authorized to subsequently withdraw (and, pending a new hearing, hold in abeyance) that warrant after the hearing to which it led was effectively nullified as a result of his habeas corpus action. We disagree.

The Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218 (1976), codifying the due process rights extended to alleged parole violators under *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), sets forth the basic procedural scheme governing parole revocation. The Act's hearing requirements are set in motion by a crucial threshold action: the alleged parole violator must first be "summoned or retaken" under a parole violator warrant, 18 U.S.C. § 4214(a)(1). After the execution of the warrant, the Act mandates a swift probable cause hearing, followed by a full hearing within sixty days and a notice of final action twenty-one days thereafter. 18 U.S.C. § 4214(a)(1)(A) and § 4214(d). But the Act also embodies a clear policy permitting the Commission to defer even setting the procedural scheme in motion pending the outcome of state charges which support the parole revocation action. 18 U.S.C. § 4213(b), for example, provides that "in a case of any parolee charged with a criminal offense, issuance of a summons, or a warrant may be suspended pending disposal of the charge." And 18 U.S.C. § 4214(a)(1)(A)(i) allows the Commission to restore parole if continuation of the revocation hearing is not warranted, even after concluding that there is probable cause to believe a violation has occurred. Such flexibility serves the salutary policy of allowing a suspected parole violator to clear himself of state charges prior to his revocation hearing, thus avoiding the necessity of his choosing between pleading his right against self-incrimination, making admissions against his interest, or testifying falsely to exculpate himself. It also conforms to the philosophy expressed in *Moody v. Daggett,* 429 U.S. 78, 89, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976), that the Commission should be permitted to consider, before its final decision, events occurring after the issuance of the warrant.

The crux of Thigpen's argument is that, even though the execution of the underlying warrant in November, 1980 led to 1) a revocation hearing which he successfully had nullified through a court stipulation and, consequently, 2) a withdrawal of the warrant, that warrant execution must be deemed to have maintained in motion forever the 18 U.S.C. § 4214 procedures, even after the court stipulation. Accordingly, he argues, the Commission violated the statute by not holding the second revocation hearing and rendering its final decision within the time limits required under 18 U.S.C. § 4214. In effect, Thigpen would deny the Commission the right to establish a clean section 4214 procedural slate (as a result of the parolee's own attack on prior procedures) by withdrawing the previously executed warrant and holding it in abeyance pending the outcome of state charges. We think that such a wooden reading of the Act is unwarranted, and indeed directly contravenes the Act's clear policy of permitting deferral of a hearing pending the resolution of state charges as well as the common sense policy of permitting the Commission to correct mistakes of constitutional dimension.

Our conclusion that the Act permits the withdrawal of a previously executed warrant, its preservation in abeyance, and a deferral of a revocation hearing pending state judicial outcomes has been embraced previously by the Third Circuit in *Franklin v. Fenton,* 642 F.2d 760 (3d Cir.1980), a case relied upon by the district court. In *Franklin,* petitioner was, as here, on parole from a federal conviction when he was arrested by state authorities and charged with a state offense. Petitioner, also as here, failed to appear in state court, and the Commission then issued a parole violator warrant. The warrant was executed and petitioner was in federal custody for two weeks. The state then notified the Commission that it would prosecute petitioner on the pending charges. The Commission then ordered that the original warrant be withdrawn, that petitioner's parole not be revoked, and that the petitioner be released to state au-

thorities. The Commission then issued a new warrant listing substantially the same violations as contained in the first warrant; the new warrant was sent to the state authorities with instructions that it be held in abeyance and be placed as a detainer against petitioner should he be found guilty of the state charges. Petitioner was found guilty and later challenged the federal detainer in a habeas corpus action.

The Third Circuit upheld the dismissal of the petitioner's action, observing that it has been the general practice of the Commission to conditionally withhold revocation of parole when the parolee is charged with a state offense during the parole term, and to defer a final decision until after state proceedings have concluded. The court noted that such deferral eliminates the difficulties encountered in a discussion of pending charges before adjudication, allows the Commission to consider all relevant factors before a revocation decision is made, minimizes disruption of the parolee's life, and is in any case implicitly approved in the Act, especially 18 U.S.C. § 4213(b). As the *Franklin* court concluded,

> Denying the Commission flexibility to defer final decision would serve the interests of neither parolee nor Commission. A restrictive approach would result in the revocation of parole in some situations in which later developments would bring about a different result. 642 F.2d at 763.

Accordingly, the Third Circuit held, the Commission can restore suspected parole violators to supervision and simultaneously defer a final hearing and decision until state disposition is complete.[1]

As the district court noted here, the factual differences between *Franklin* and the case at bar are without significance. Instead of withdrawing the original warrant and then issuing a new warrant, here the Commission simply stipulated that the orig-

inal warrant be withdrawn and held in abeyance pending disposition of state charges. And here an abortive revocation hearing was held prior to the withdrawal of the warrant. But the withdrawal and reissuance of the old warrant instead of the issuance of an identical new warrant is surely an inconsequential difference of form; and the occurrence of an abortive revocation hearing prior to the withdrawal is of no relevance in view of the clean procedural slate created, to the benefit of Thigpen, by the withdrawal of the warrant. More importantly, neither of these factual differences undercuts the policy basis of *Franklin* favoring flexibility and full consideration of all relevant factors before final parole revocation decisions are made. Indeed, the reasons for permitting warrant withdrawal and hearing deferral are even stronger here where, unlike in *Franklin,* such action was taken to correct the very constitutional infirmities which were identified and protested by the plaintiff. The Commission is permitted the leeway to respond intelligently to such circumstances.

In sum, we think a common sense and policy-sensitive reading of the Act yields the conclusion that the Commission is not forbidden, once having executed a warrant and having held a constitutionally infirm hearing which the petitioner successfully nullified, from withdrawing that warrant and delaying its re-execution. Having thus created a clean procedural slate, the Commission is not, despite Thigpen's contentions, constrained to consider its earlier execution of the warrant as having the effect of residually imposing 18 U.S.C. § 4214 requirements before the warrant is re-executed.

Thigpen appears to alternatively contend that the Commission's May, 1981 Notice of Action should be construed as a "final decision" rendered pursuant to the section 4214

---

1. The *Franklin* court also considered the effect of *Maslauskas v. United States Board of Parole,* 639 F.2d 935 (3d Cir.1980), relied upon by Thigpen here. The Third Circuit noted that its previous decision in *Maslauskas,* taking a restrictive view of the Commission's ability to defer a hearing, was predicated on statutory provisions, *e.g.,* 18 U.S.C. §§ 4205 and 4207 (1970) (repealed 1976), which were in effect before the Parole Commission and Reorganization Act of 1976 was enacted; the later Act, and especially 18 U.S.C. §§ 4213(b) and 4214(a)(1)(A)(i), it noted, embraced a clear policy favoring deferral.

procedures triggered initially by the November, 1980 warrant execution. In effect, Thigpen argues that his "conditional" reinstatement to parole should really be considered as the final outcome of the abortive first revocation hearing. Such an interpretation, however, is without logical foundation. First, as the district court noted, even accepting *arguendo* the continued relevance of the nullified procedures, the reinstatement is by its very terms "conditional" and not "final." But more importantly, it is clear that this conditional reinstatement in no way related back to, referred to, or rested upon, the previous, and moribund, revocation procedure; it was wholly prospective, and obviously presumed a slate wiped clean of any previous warrant execution, probable cause hearing, or adjudication on the merits. To say that the Commission's May, 1981 Notice was the regular culmination of an earlier procedure is to ignore that the earlier procedure was rendered, at Thigpen's own initiative, a nullity.

In view of our conclusion that the Commission did not lack statutory authority to withdraw its warrant, conditionally reinstate Thigpen to parole, and defer the commencement of section 4214 procedures until a later reexecution of the warrant, we need not reach the Commission's alternative argument that Thigpen's assent to this procedure in the May, 1981 court stipulation estops him from denying its validity.

For the foregoing reasons, the district court's denial of plaintiff-appellant's motion for summary judgment and a preliminary injunction and its grant of summary judgment in favor of the Commission is affirmed.

AFFIRMED.