**Minor Michael STILL,
Petitioner-Appellant,**

v.

**UNITED STATES MARSHAL, United States Parole Commission and Denver Sheriff's Department, Respondents-Appellees.**

**No. 84–2509.**

United States Court of Appeals,
Tenth Circuit.

Dec. 23, 1985.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a), Tenth Circuit R. 10(e). The cause is therefore submitted without oral argument.

The issue presented by this appeal is whether the United States Parole Commission has the statutory authority to withdraw a parole violator warrant, once it has been executed, and hold it in abeyance pending the disposition of the state charges which form the basis for the warrant.

Petitioner was originally convicted in federal court of interstate transportation of a stolen vehicle and was sentenced to a five-year term of imprisonment. On February 28, 1984, he was released from prison and placed under the supervision of the Parole Commission. On April 4, 1984, the Commission issued a parole violator warrant charging petitioner with larceny and theft of a motor vehicle. On May 21, 1984, petitioner was arrested by Colorado authorities for auto theft and detained in the Denver jail. The U.S. Marshal sent a message to the Denver Police Department authorizing it to detain petitioner and "remand subject to custody of the U.S. Marshal, Denver, Co." Brief for the Appellant, app. B. The next day, a Deputy U.S. Marshal executed the federal parole violator warrant, stating on the return that he had executed the warrant by arresting petitioner and committing him to the Denver jail. That same day, a U.S. Probation Officer conducted a preliminary interview of petitioner at the U.S. Marshal's office in Denver, Colorado. During the interview, petitioner denied that he had committed larceny or auto theft but admitted that he had committed two technical parole violations.[1] Accordingly, the probation officer determined there was probable cause to believe that petitioner had violated the conditions of his parole.

---

1. The technical parole violations were failure to report a change of address and change of employment.

Petitioner was notified of this finding by a letter from the Parole Commission dated June 5, 1984, addressed to petitioner "c/o U.S. Marshal." Brief for the Appellant, app. f. The letter also informed petitioner that a revocation hearing would be scheduled and that "[n]o new information was presented at [his] Preliminary Interview that would warrant [his] release pending the revocation hearing." Id.

On July 9, 1984, petitioner's counsel contacted the Parole Commission and learned that petitioner's revocation hearing had been canceled on June 21, 1984. On July 13, 1984, petitioner's counsel filed a petition for habeas corpus and mandamus seeking to compel the Parole Commission to grant petitioner a timely revocation hearing. In its answer to the petition, the Commission stated that the parole violator warrant had been withdrawn on June 5, 1985, the same day that petitioner was notified of the results of the preliminary interview. The Commission further stated that the warrant was "to be held in abeyance pending the outcome of State charges." Record, vol. 1, at 6.

The district court denied the petition, finding that "18 U.S.C. § 4213(b) gives the parole commission the authority to postpone the hearing pending the outcome of the state charges." Record, vol. 1, at 20. Petitioner filed a motion for rehearing on the grounds that the district court's Order

was based on the misapprehension that petitioner had "always been in state custody from the time of the execution of the warrant...." Record, vol. 1, at 22. The district court entered an Amended Order on October 1, 1984, 593 F.Supp. 1323, making no finding on the question whether petitioner had ever been in federal custody,[2] but ruling that "[a] common sense and policy-sensitive reading of the Act yields the conclusion that the Parole Commission is not precluded from withdrawing an executed warrant and then delaying its re-execution." Record, vol. 1, at 25. Petitioner appeals from this Order, contending that the Commission exceeded its statutory authority in withdrawing and holding in abeyance the previously executed warrant. Petitioner also maintains that the procedure used by the Commission in this case is contrary to the due process safeguards announced in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In 1976, Congress enacted the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218 (1976), establishing the United States Parole Commission and setting forth a comprehensive procedural scheme governing the parole of federal prisoners. The Act established clear standards for the revocation of parole and, among other things, codified the full panoply of due process rights extended to alleged parole violators in *Morrissey v.*

2. The record is unclear as to whether the Colorado authorities ever relinquished custody of petitioner to the federal authorities. The record does show, however, that a Deputy U.S. Marshal executed the parole violator warrant on May 22, 1984. The warrant commands the federal officer "*to execute* this warrant *by taking* the above-named ... *and hold him in your custody.*" Brief of Appellant, app. A (emphasis added). The Deputy U.S. Marshal stated on the return of service that he "executed same *by arresting* [petitioner] ... and committing him to Denver City Jail." Brief of Appellant, app. C (emphasis added).

The Parole Commission's preliminary interview form recites that it is to be completed "following the arrest on a Warrant." It states further that "[f]ollowing the interview, you will be held in local custody pending a determination by the Commission as to whether there is probable cause...." Brief of Appellant, app. D.

The summary report of petitioner's preliminary interview states: "The parolee was taken into Federal custody May 22, 1984 ...." Brief for the Appellant, app. E at 1.

The Commission's regulations establish that the Federal officer "shall execute [the] warrant by taking the parolee and returning him to the custody of the Attorney General," 28 C.F.R. § 2.46(a), and that "*[o]n arrest* of the parolee the officer executing the warrant shall deliver to him a copy of the Warrant Application ...." Id. at § 2.46(b) (emphasis added). The Preliminary Interview is conducted after the parolee "is retaken on a warrant issued by a Commissioner ...." Id. § 2.48(a). These regulations clearly contemplate that the parolee is taken into federal custody when these procedures are followed. Thus, we must accept petitioner's uncontroverted assertion that he was taken into federal custody when the Deputy U.S. Marshal executed the parole violator warrant on May 22, 1984.

*Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Section 4213 of the Act provides that the Commission may initiate parole revocation proceedings using either a warrant or a summons. Regardless of the procedure used, the revocation proceedings must be initiated as soon as practicable after the discovery of the alleged parole violation "except when delay is deemed necessary." 18 U.S.C. § 4213(b) (1976). Ordinarily, imprisonment is not deemed to be grounds for delay; however, when the parolee is charged with a criminal offense, "issuance of a summons or warrant may be suspended pending disposition of the charge." *Id.*

The Act's procedural requirements are found in section 4214. Under this section, a parolee "retaken" pursuant to a warrant is entitled to a prompt hearing to determine whether there is probable cause to believe that he has committed a parole violation.[3] 18 U.S.C. § 4214(a)(1)(A) (1976). Upon a finding of probable cause, the Act mandates a local revocation hearing within sixty days of the probable cause hearing. 18 U.S.C. § 4214(a)(1)(B) (1976). Where, as here, the parolee admits to a parole violation at the probable cause hearing, the Commission has ninety days from the date of the parolee's "retaking" to conduct a revocation hearing. 18 U.S.C. § 4214(c) (1976).

The Parole Commission and Reorganization Act of 1976 is silent on the question whether the Commission may defer a parole revocation hearing by withdrawing a previously executed parole violator warrant. Respondents contend, however, that such a procedure is authorized by section 4213(b) of the Act, which provides that "in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge." While this provision gives the Commission sufficient flexibility to defer a parole revocation hearing until the completion of the parolee's new sentence, it does not imply that, once the Commission has triggered the Act's procedural requirements by "retaking" the parolee pursuant to a warrant, *see Moody v. Daggett,* 429 U.S. 78, 89, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976), it can circumvent those requirements by simply withdrawing the warrant. First, we must presume that Congress understood the distinction between "issuance" and "execution," especially since it is only the latter which sets in motion the Act's procedural safeguards. Second, even if section 4213(b) expressly authorized the Commission to suspend *execution* of a warrant, it would not include the authority to *withdraw* a warrant once it has been executed. Because of the comprehensiveness of the Act's procedural requirements, we decline to read into it a procedure that Congress could have easily provided for had it so intended.

Respondents have not suggested that any other section of the Act delegates to the Commission the authority exercised here, nor have we been able to discern such a grant of authority from reading the statute. We believe that a restrictive reading of the Act is mandated by the well-established principle of statutory construction that, in the absence of clearly expressed legislative intent, a statute should be construed to avoid difficult constitutional issues. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979); *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). In our view, a broad construction of the Act would raise serious due process questions in light of *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). However, we do not reach this issue for we find that the Commission exceeded its statutory authority by

---

**3.** The parolee's conviction of a crime committed subsequent to his release on parole obviates the requirement for a probable cause hearing. 18 U.S.C. § 4214(b)(1) (1976). Nor is a hearing required if the parolee knowingly and intelligently waives his right to such a hearing. 18 U.S.C. § 4214(c) (1976).

withdrawing the parole violator warrant and holding it in abeyance.

Respondents rely primarily on two circuit court cases that have held that the Parole Commission may withdraw a previously executed parole violator warrant and reexecute it at a later date. *Thigpen v. United States Parole Comm'n,* 707 F.2d 973 (7th Cir.1983); *Franklin v. Fenton,* 642 F.2d 760 (3d Cir.1980). We believe that these cases are of some doubt, however, and decline to follow them.

In *Franklin,* the petitioner was on federal parole when he was arrested by state authorities for receiving stolen goods. When the petitioner failed to appear in state court, a federal parole violator warrant was issued. The warrant was executed, and the petitioner remained in federal custody for two weeks. When the state notified the Parole Commission that it intended to prosecute the petitioner, the Commission withdrew the warrant, ordered that the petitioner's parole not be revoked, and released the petitioner to the state authorities. The Commission then issued a new warrant premised on identical grounds as those contained in the original warrant and placed the new warrant as a detainer at the institution where the petitioner was confined. The petitioner challenged the federal detainer in a habeas corpus action.

The Third Circuit upheld the district court's denial of the petition, noting that it had been the general practice of the Commission to withhold its decision whether to revoke parole when the parolee is charged with a state offense while on parole. The court found that the Commission's action was "implicitly approved" by section 4213(b) of the Act, which provides that "in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge." *Franklin,* 642 F.2d at 763. In conclusion, the *Franklin* court remarked:

> The procedure followed here is consistent with the spirit of § 4213(b) which allows issuance of a warrant to be suspended pending disposition of charges against

the parolee. It is consistent also with the philosophy expressed in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), of permitting the Commission to consider events occurring after issuance of the warrant. Denying the Commission flexibility to defer final decision would serve the interests of neither parolee nor Commission. A restrictive approach would result in the revocation of parole in some situations in which later developments would bring about a different result.

*Id.*

In *Thigpen v. United States Parole Comm'n,* 707 F.2d 973 (7th Cir.1983), the Seventh Circuit, relying exclusively on the reasoning of *Franklin,* held that "a common sense and policy-sensitive reading of the Act yields the conclusion that the Commission is not forbidden, once having executed a warrant ..., from withdrawing that warrant and delaying its re-execution." *Id.* at 977.

While we agree with the *Franklin* and *Thigpen* courts that parole revocation decisions should be premised upon consideration of all relevant information, we do not find this policy to be a sufficient basis for reading into the Act something obviously omitted from its terms. First, the Commission may already effectuate this policy by executing parole violator warrants only in those cases where no legitimate purpose would be served by delaying a parole revocation hearing. Second, as the legislative history of the Act makes clear, delaying disposition of the parole revocation hearing will often be to the parolee's disadvantage:

> If the offender during the period of his parole supervision is convicted of new offenses under state or federal law, and if the conviction is for more than a minor violation, revocation of parole is almost automatic. In such cases, the issue before the Commission is how much of the time remaining on the original sentence must be served by the parolee and whether this time should be served concurrently or consecutively with the new sentence. By conducting a parole revo-

cation hearing early in the new sentence, the Commission retains the option to run the original sentence concurrent with the new sentence and the parolee is spared the unnecessary complications of an unresolved parole detainer pending throughout the service of his new sentence.[4]

S.Rep. No. 369, 94th Cong., 2d Sess. 17–18, *reprinted in* 1976 U.S.Code Cong. & Ad. News 335, 339.

Furthermore, we believe that the conclusion reached by the Third Circuit in *Franklin* is doubtful in light of the Third Circuit's earlier decision in *Maslauskas v. United States Board of Parole,* 639 F.2d 935 (3d Cir.1980). There, relying on *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), and its interpretation of the statutory predecessor of the new Act, the Third Circuit held that the Parole Board could not execute a warrant, decide that the parolee's parole should not be revoked, and then issue another warrant premised on the same grounds as those contained in the first warrant.[5] In *Franklin,* the Third Circuit found that the *Maslauskas* decision was not controlling because *Maslauskas* was based on an interpretation of the statutory predecessor to the 1976 Act. However, the *Franklin* court's approval of the Commission's action was based in part on an interpretation of 28 C.F.R. § 2.44(a) (1979), which provides that a warrant may be issued or withdrawn by a member of the Commission. Ironically, in *Maslauskas,* the court had relied on the phrase "a warrant" in 28 C.F.R. § 2.35 (1972) in concluding that the regulation contemplated "execution [of] only one warrant for any given parole violation or violations." 639 F.2d at 939.

■ Having determined that the Commission exceeded its statutory authority in withdrawing the parole violator warrant and therefore delaying petitioner's revocation hearing, we must determine what relief, if any, petitioner is entitled to as a result of this violation. Because petitioner

---

**4.** In *Cooper v. Lockhart,* 489 F.2d 308, 314 n. 10 (8th Cir.1973), the United States Court of Appeals for the Eighth Circuit described the detrimental consequences of a detainer on the parolee's period of confinement as follows:

> [T]he inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i.e., honor farms or forestry camp work); (4) ineligible for trustee status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional system, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle them to additional good time credits against their sentence; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities.

*See also Moody v. Daggett,* 429 U.S. 78, 93–95, 97 S.Ct. 274, 281–82, 50 L.Ed.2d 236 (1976) (Stevens, J., dissenting).

**5.** The *Maslauskas* court observed that its extensive research had disclosed no case in which a court had upheld the execution of a second warrant issued on the same grounds as one previously executed and disposed of in favor of the parolee. The court cited several cases where subsequent parole violations formed the basis for the issuance of the second warrant. 639 F.2d at 939. *E.g., Johnson v. Holley,* 528 F.2d 116 (7th Cir.1975); *United States ex rel. Davis v. Johnson,* 495 F.2d 335 (3d Cir.1974), *cert. denied,* 419 U.S. 878, 95 S.Ct. 143, 42 L.Ed.2d 118 (1974); *Arrington v. McGruder,* 490 F.2d 795 (D.C.Cir.1974); *Wright v. Blackwell,* 402 F.2d 489 (5th Cir.1968); *Lipscomb v. Stevens,* 349 F.2d 997 (6th Cir.1965), *cert. denied,* 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1965); *Brown v. Taylor,* 287 F.2d 334 (10th Cir.1961), *cert. denied,* 366 U.S. 970, 81 S.Ct. 1933, 6 L.Ed.2d 1259 (1961). The court cited only three cases in which a second warrant issued on the same grounds as the first, *Greene v. Michigan Department of Corrections,* 315 F.2d 546 (6th Cir.1963); *United States ex rel. Hughes v. Ragen,* 154 F.2d 289 (7th Cir.1946); *Smith v. Witkowski,* C.A. No. 77–3881 (N.D.Ill. December 21, 1979), but, in all those cases, the first warrant *had never been executed. See also Wade v. United States Board of Parole,* 392 F.Supp. 327 (E.D.Wash.1975) (Court's ruling to quash warrant not to be construed to foreclose later reissuance of unexecuted warrant).

has been in the custody of state officials since the withdrawal of the parole violator warrant, and because he is still serving a state sentence, the Commission's failure to afford petitioner a timely revocation hearing does not entitle him to be released from imprisonment. *Harris v. Day,* 649 F.2d 755, 761–62 (10th Cir.1981); *Spotted Bear v. McCall,* 648 F.2d 546, 547 (9th Cir.1980). However, because petitioner was taken into federal custody under the parole violator warrant on May 22, 1984, any time he has served since that date must be credited toward the unexpired term of his federal sentence.

Petitioner's federal sentence began to run upon execution of the parole violator warrant, *see Barrier v. Beaver,* 712 F.2d 231, 236 (6th Cir.1983), and the unauthorized withdrawal of the warrant did not toll the running of his sentence. Accordingly, we reverse and remand with directions that the Parole Commission afford petitioner a revocation hearing as soon as practicable and not later than sixty days from the date hereof. If such hearing results in the revocation of petitioner's parole, the Commission is further ordered to credit petitioner with the number of days he has spent in custody since May 22, 1984. *Cf. United States ex rel. Fitzpatrick v. United States Parole Comm'n,* 444 F.Supp. 1302 (M.D. Pa.1978).

REVERSED.

LOGAN, Circuit Judge, dissenting:

I must dissent.

I do not see any significant distinctions between the case before us and *Thigpen v. United States Parole Commission,* 707 F.2d 973 (7th Cir.1983), and *Franklin v. Fenton,* 642 F.2d 760 (3d Cir.1980), both of which allowed withdrawal of an issued parole violator warrant. *Accord Thompson v. United States Parole Commission,* 553 F.Supp. 1027, 1030 (D.D.C.1983).

I would not hesitate to create a split in the circuits if I were convinced that these other courts were interpreting the law incorrectly. I think, however, that *Thigpen* and *Franklin* properly interpreted the Pa-

role Commission and Reorganization Act of 1976 (the 1976 Act), given the gloss the Supreme Court provided in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). The 1976 Act, particularly at 18 U.S.C. § 4214, grants the United States Parole Commission broad discretion in its handling of parole revocations.

The majority uses the principle of strict statutory construction to conclude that Still's hearing rights were violated. Still was "retaken," the majority holds, and under 18 U.S.C. § 4214 a retaking requires a hearing. As the majority correctly notes, no express provision in the parole statutes provides for the withdrawal of a warrant once it has been executed. But similarly there is no express provision in the parole statutes for delay of execution of an issued warrant. Despite this, *Moody* expressly held that the Parole Commission could issue a warrant against an incarcerated parole violator without executing it promptly and without triggering the right to a hearing. 429 U.S. at 89, 97 S.Ct. at 279. The Parole Commission can instead lodge an issued warrant as a detainer against the parolee, to be executed when the parolee is released from present custody. *Id.* The *Moody* Court held that the lack of an express provision in the statute and the general due process hearing rights found earlier for parolees in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), did not require a contrary decision.

The Supreme Court's decision in *Moody* cannot reasonably be reconciled with the majority's holding today. The execution and withdrawal of the violator warrant here seem to me to be the functional equivalent of the issuance without execution that *Moody* upheld. Still was not removed from the state jail at the time of this warrant's "execution," and he remained incarcerated on the state charge at all times thereafter. There is every indication that the Parole Commission's attempted execution here was simply a bureaucratic mistake. Because we must say that the Commission could have initially issued the warrant and lodged it as a detainer, I believe

we also must say that the Commission could correct its error by withdrawing the executed warrant and restoring Still to his intended detainer status.

The majority points to various "detriments" that would flow from the delay in Still's revocation hearing if we allow withdrawal of the executed warrant. But any such detriment is identical to the delay and detriment experienced by a parolee subject to an issued but unexecuted warrant. In *Moody* the Supreme Court discussed these detriments at length and expressly found that they did not raise any due process or statutory construction problems. *See Moody*, 429 U.S. at 85–88 & n. 9, 97 S.Ct. at 277–79 & n. 9. I do not see how we can now say that these detriments do raise due process and statutory construction problems.

I add that I think it is generally to the parolee's advantage to permit the Commission to delay the parole revocation hearing, even when the deferral results from withdrawal of an executed warrant. If the Commission were forced to hold an immediate hearing, it surely would order the parolee's original sentence to begin running again only on release from the confinement portion of the new sentence or on the date of reparole, and not concurrently. *See* 28 C.F.R. § 2.47(d)(2) (general policy is to restart only on release from new confinement). The Commission presently can act favorably to the prisoner even while he is being detained on unrelated charges; the statute itself contemplates a review of parole detainers within 180 days of notification to the Commission of placement serving a new sentence. 18 U.S.C. § 4214(b)(1).[1]

Further, as noted in *Thigpen*, the flexibility of being able to defer setting the procedural scheme in motion

"serves the salutary policy of allowing a suspected parole violator to clear himself of state charges prior to his revocation hearing, thus avoiding the necessity of

his choosing between pleading his right against self-incrimination, making admissions against his interests, or testifying falsely to exculpate himself. It also conforms to the philosophy expressed in *Moody v. Daggett*, 429 U.S. 78, 89, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976), that the Commission should be permitted to consider, before its final decision, events occurring after the issuance of the warrant."

707 F.2d at 976.

In the recent case of *Brock v. United Transportation Union*, — U.S. —, 106 S.Ct 286, 88 L.Ed.2d 2, (1985), the Supreme Court considered the question of the Secretary of Labor's power to withdraw a citation already issued to an employer for allegedly unsafe working conditions in violation of the Occupational Safety and Health Act. An interested party argued that the Secretary of Labor could not withdraw the citation once it had been issued. In upholding the Secretary's power to withdraw the citation, the Court stated:

"It is the Secretary, not the Commission, who sets the substantive standards for the work place, and only the Secretary has the authority to determine if a citation should be issued to an employer for unsafe working conditions, 29 U.S.C. § 658. A necessary adjunct of that power is the authority to withdraw a citation and enter into settlement discussions with the employer."

*Id.* at 288.

Although *Brock* does not deal with the power to reissue a withdrawn complaint, the Supreme Court's comment seems applicable to the instant situation. The Parole Commission has broad discretion to administer the 1976 Act. If it can defer the execution of a warrant that it had issued during the service of a sentence for a separate crime, as *Moody* expressly holds, it should also be empowered to withdraw an issued warrant, without prejudice to reis-

---

1. If evidence of mitigation may be lost unless some action is taken promptly, the Commission has the power to conduct an immediate hearing at which the evidence can be preserved. *See Moody*, 429 U.S. at 88 n. 9, 97 S.Ct. at 279 n. 9.

suance, even after a purported "execution," at least in circumstances in which there was no new incarceration because of the execution of that warrant.

Finally, even if I were to agree with the majority that the withdrawal of the warrant violated the 1976 Act, I still would disagree with its holding that Still's federal sentence recommenced on the day the warrant was executed and was never tolled thereafter. *Barrier v. Beaver,* 712 F.2d 231 (6th Cir.1983), upon which the majority relies for that proposition, did not consider a situation at all like that at issue here. For time spent serving a state sentence in a state institution to count against a parole violator's original federal sentence, two things are required: (1) a revocation of the federal parole, and (2) a redesignation by the United States Attorney General of the state prison as the one in which the remainder of the original sentence could be served. *Hash v. Henderson,* 385 F.2d 475, 477 (8th Cir.1967). Neither step was taken here.

Further, it is settled law that if there has been no prejudice to a petitioner from a failure to hold a hearing within sixty days pursuant to § 4214, the only remedy for that violation is to give the petitioner a parole revocation hearing. *See Smith v. United States,* 577 F.2d 1025, 1027–29 (5th Cir.1978) (fully discussing remedy problem); *accord Hopper v. United States Parole Commission,* 702 F.2d 842, 847 (9th Cir.1983); *Carlton v. Keohane,* 691 F.2d 992, 993 (11th Cir.1982); *Harris v. Day,* 649 F.2d 755, 761–62 (10th Cir.1981).

Here Still has not been prejudiced. As noted, his experience was essentially identical to that of a parolee in state custody against whom an issued violator warrant has been lodged as a detainer. Under *Moody* this latter circumstance is legal. I therefore see nothing in Still's circumstance that could be labeled as prejudice from the denial of a prompt parole revocation hearing. The Commission retains the same power to refuse revocation or to consider the time spent in state custody in its eventual revocation decision. Also, here,

as in *Smith,* the Commission's failure to hold a hearing was not an intentional violation of § 4214. *See Smith,* 577 F.2d at 1029; *see also Carlton,* 691 F.2d at 993. As *Smith* emphasized, an unintentional violation does not warrant the "draconian" remedy the majority here imposes. 577 F.2d at 1028–29.

For the above reasons, I dissent.