**UNITED STATES of America ex rel. Charles BISHOP H–4971, Appellant,**

v.

**A. T. RUNDLE, Supt.**

**No. 18778.**

United States Court of Appeals, Third Circuit.

Argued Dec. 11, 1970.

Decided Jan. 12, 1971.

Mary Bell Hammerman, Philadelphia, Pa., for appellant.

J. Bruce McKissock, Asst. Dist. Atty., Philadelphia, Pa. (James D. Crawford, Deputy Dist. Atty. for Law, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before ALDISERT, ADAMS and ROSENN, Circuit Judges.

### OPINION OF THE COURT

PER CURIAM:

In this appeal from the district court's denial of a writ of habeas corpus, appellant raises two questions: (a) whether it was proper to admit his confession in a state murder trial, and (b) whether he was entitled to counsel when the Juvenile Division of the County Court of Philadelphia certified his case to the state criminal court.

Appellant argues that his confession was tainted because the custodial setting in which it was taken followed an arrest for which there was no probable cause, and that it was the product of police coercion. Approaching this question from an independent examination of the whole record, we conclude that there was probable cause for his arrest by the Homicide Division and that the statement met the test of voluntariness.

The body of a sixteen year old girl was found on March 31, 1963. Following a preliminary opinion of the medical examiner that she had been dead from two to five days, two branches of the Philadelphia Police Department—the Homicide Division and the Special Investigation Squad (SIS)—began working on the case. By the morning of April 6, 1963, the SIS had learned from the mother of the dead girl that her daughter had been receiving telephone calls from a person named "Peanut," that no such calls had been received since her disappearance, and that Charles Bishop was one of several boys in the neighborhood nicknamed "Peanut." At 10:45 a.m. that morning the SIS went to the home of appellant's aunt, where he was living, and asked him to come to their office for questioning. The aunt was invited to accompany him, but declined. Appellant remained with this squad for some three and one-half hours, during which time he was questioned intermittently and given, or at least offered, lunch. No incriminating statement was made by appellant during this questioning.

Shortly after noon, the Homicide Division requested SIS to bring appellant to its headquarters. When this request was made, the division knew that the time of death was approximately 9:30 p.m. on March 28, 1963,[1] that a witness had seen the decedent with a young man

on the night of March 28 at approximately 9:00 p.m., and that the description of the decedent's companion bore a resemblance to appellant. Homicide also knew of the telephone calls from "Peanut" and that the person being questioned by SIS had this nickname. Appellant was transferred to this division about 2:30 p.m., and by 3:10 p.m. "admitted participating" in the crime; by 5:40 p.m., the recording of the statement introduced at trial began.[2]

The district court found there was probable cause for the Homicide Division to make this warrantless arrest, and we agree. In considering appellant's direct appeal, the Pennsylvania Supreme Court said:

> [p]robable cause means that "the facts and circumstances within their (arresting officers) knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief" that the suspect had committed a crime: Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). See also Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

Commonwealth v. Bishop, 425 Pa. 175, 228 A.2d 661, 664–665 (1967).

In United States v. Thompson, 420 F.2d 536 at 540, this court, speaking through Judge Maris, stated:

> The reviewing court must evaluate the individual facts of each case; inquiry must be made as to what objective facts were available to the arresting officers to support a belief * * * that the defendant had acted * * * unlawfully.

At the time the Homicide Division took Bishop into custody it was in possession of the following "reasonably

---

1. An autopsy determined that the girl's death was caused by strangulation and that sperm was present in her vagina. Based upon information received from her family as to her last dinner at home, and upon the state of digestion of the

food, the time of death was established to be 9:30 p. m., March 28, 1963.

2. For a detailed discussion of the facts adduced at trial, see Commonwealth v. Bishop, 425 Pa. 175, 228 A.2d 661 (1967).

trustworthy information": (a) a statement from decedent's mother that her daughter recently had been receiving telephone calls from a person named "Peanut"; (b) appellant was known by this name; (c) the telephone calls at the family residence stopped after her disappearance; (d) shortly before the estimated time of death, a storekeeper reported that the decedent was in the company of a young man whose description matched that of appellant. Under these circumstances we agree with the district court's conclusion that there was probable cause for the Homicide Division to have made the arrest.[3]

■ A question remains, however, whether the illegality of the original arrest by SIS[4] contaminated the subsequent acquisition of information constituting probable cause. We accept the answer to this question given by District Judge John P. Fullam:

> It is clear that evidence which flows from an illegal arrest cannot be used to cure the original illegality. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960). In our case, however, the original illegal arrest in no way contributed to the police knowledge constituting probable cause. It is of course true that the relator's physical presence pursuant to the unlawful arrest made it possible for the police to match his description more promptly and conveniently than would otherwise have been the case. But it is clear that relator's presence

in custody contributed neither to the knowledge of the witness nor to the accuracy of, or occasion for, her describing him.

309 F.Supp. 315.

Although it does not appear that the police gave appellant the appropriate warnings of his constitutional rights, the doctrines of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), not being retroactive, are not applicable because appellant's trial was from July 30 to August 5, 1963. The absence of such warnings, of course, is a factor to be considered in determining if appellant's statements were the product of his free will. From our review of the record, considering all of the circumstances, including appellant's age and the results of his psychological tests, we conclude that his "will [was not] overborne and his capacity for self-determination critically impaired." Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

■ We summarily dispose of appellant's second argument that he was denied due process because he was not represented by counsel at the proceedings in which the Juvenile Division certified appellant's case to the Court of Oyer and Terminer (criminal court). Because this point was not raised or discussed in the district court, we will not notice it in this appeal.[5]

---

3. In the view we take of this case it is not necessary to reach the question of the admissibility of verbal evidence elicited after an illegal arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22 (3 Cir. 1965). For a discussion of this concept as applied to the case at bar, see Commonwealth v. Bishop, *supra*, 228 A.2d at 665–666, affirming appellant's conviction on direct appeal.

4. The Commonwealth concedes that there was no probable cause for arrest at the time SIS visited appellant at his aunt's

home. The detention of appellant by SIS was characterized by the district court as an "illegal arrest."

5. An examination of the record of the proceedings in the County Court of Philadelphia, Juvenile Division at No. 153742 on April 22, 1963, and May 6, 1963, constituting the certification proceedings, discloses, however, that appellant was represented by William J. Kelley, Esq., who actively participated in the proceedings on both days. Moreover, it does not appear that appellant has exhausted any state remedies on this issue.

We agree with the district court that appellant has not exhausted state remedies on other issues.

The judgment of the district court will be affirmed.