Paul E. MASLAUSKAS, Appellant in No. 79–1845

v.

U. S. BOARD OF PAROLE et al., Appellees.

Paul E. MASLAUSKAS, Appellant in No. 79–2139

v.

Charles E. FENTON, Warden, Appellee.

Nos. 79–1845, 79–2139.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Feb. 19, 1980.

Decided June 24, 1980.

Rehearing Denied Aug. 4, 1980.

Robert B. Wayne, Williamsport, Pa., for appellant.

Carlon M. O'Malley, Jr., U. S. Atty., Scranton, Pa., Frederick E. Martin, Asst. U. S. Atty., Lewisburg, Pa., for appellees.

Before GIBBONS, Circuit Judge, RO-SENN, Circuit Judge, and SHAPIRO, District Judge.[*]

## OPINION OF THE COURT

SHAPIRO, District Judge.

Petitioner, Paul E. Maslauskas, has filed two *pro se* petitions for a writ of *habeas corpus.* The first seeks withdrawal of a parole violator warrant issued on March 22, 1972 and lodged as a detainer in the spring of 1976; the second seeks release from the parole violator term that commenced when this warrant was executed on November 25, 1978. The district court dismissed both petitions and Maslauskas appealed. Both petitions, dealing with precisely the same issue, have been consolidated on appeal. We reverse the dismissals and remand with direction to grant the writs for the reasons stated below.

## I. FACTS

On July 24, 1967, petitioner was sentenced to a regular adult term of six years for transporting forged and counterfeited

---

[*] The Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

securities in interstate commerce in violation of 18 U.S.C. § 2314. He was paroled on March 22, 1971 with approximately two years remaining on his sentence. On February 17, 1972, he was arrested on state drug charges. As a result of this arrest the United States Board of Parole[1] issued a parole violator warrant for Maslauskas on March 8, 1972.[2] This warrant was executed on March 13, 1972[3] and Mr. Maslauskas was incarcerated for nine days. On March 22, 1972, the Board ordered that petitioner's "parole should not be revoked and he be immediately released from custody and reinstated to supervision."[4] Thereafter, he served his parole term, which expired in April, 1973, without incident.[5]

Notwithstanding the Board's Order of March 22, 1972 that parole should not be revoked, a second violator warrant issued that same day.[6] It was accompanied by a warrant application which, but for the date of issuance, was identical with the warrant application of March 8, 1972. On March 24, 1975, Maslauskas was sentenced to four years of imprisonment on new federal charges. On May 21, 1975, Maslauskas entered a guilty plea to the 1972 state drug charges and was sentenced to a term of probation to run consecutively to his federal sentence.[7] In November, 1975 and February, 1976, sentences of imprisonment totaling an additional one year and six months were imposed following guilty pleas on additional federal offenses, all of which involved interstate transport of forged securi-

ties. The warrant of March 22, 1972 was lodged as a detainer against Maslauskas on May 18 or 19, 1976[8] and the Parole Commission was so informed.[9]

In December of 1976, the Commission prepared forms, giving Maslauskas notice of a forthcoming dispositional review, which were never mailed to him. This error was not detected until July, 1978, at which time new forms were sent. However, on January 12, 1977, without Maslauskas' knowledge or participation, a dispositional review had been held at which it was decided not to disturb the detainer. The letter so informing Maslauskas was sent to the wrong prison and not received by the prisoner. On February 10, 1977, the Commission sent copies of this letter to prison officials and requested that Maslauskas be advised "as soon as possible" of the results of the dispositional review. Nevertheless, it was not until January, 1978 that the prisoner first learned of the outstanding detainer resulting from the March 22, 1972 violator warrant.[10]

Although the Commission was engaged in active correspondence with Maslauskas during January, 1978, it conducted another review of the violator warrant in February, 1978 without notifying him. Maslauskas was informed of that review decision on April 25, 1978 and filed his first *pro se* petition for writ of *habeas corpus*.[11] On November 28, 1978, the district court ordered the Commission to hold a disposition-

---

1. The Board of Parole's functions were transferred to the United States Parole Commission on May 14, 1976 by §§ 12 and 16(b) of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201 *et seq.* (1976). Any order of the Board of Parole entered prior to that date affecting a parole term is a valid order of the Commission according to the terms of the order; 28 C.F.R. § 2.58 (1979).

2. Docket Entry No. 4, Affidavit at 1, Cir. No. 79-1845; Docket Entry No. 12, Exhibit 2 (Warrant Application) Cir. No. 79-2139.

3. Affidavit at 1, *supra*, n. 2; Exhibit 2, *supra*, n. 2 (letter dated March 14, 1972).

4. Docket Entry No. 4, Exhibit B, and Docket Entry No. 1, Exhibit I, Cir. No. 79-1845.

5. No certificate of discharge issued, but 18 U.S.C. § 4210(f) (1976), which *requires such* issuance, was not effective until May 14, 1976.

6. Docket Entry No. 4, Affidavit at 1 and Exhibit C, Cir. No. 79-1845.

7. Affidavit at 1, *supra*, n. 2.

8. Docket Entry No. 4, Exhibit H, Cir. No. 79-1845; Docket Entry No. 12, Exhibit 1, Cir. No. 79-2139.

9. Affidavit at 3, *supra*, n. 2.

10. Docket Entry No. 4, Affidavit and Exhibits, Cir. No. 79-1845.

11. D.D.C. Civ. No. 78-949.

al review of the parole violator warrant; the review was held *ex parte* in January, 1979, and the warrant detainer retained in force. This review was held more two and one-half years after the Commission was first advised that the second violator warrant was lodged as a detainer.[12] The court found no prejudice from the long delay in holding the dispositional review and dismissed the *habeas* petition.

## II. THE DELAYED DISPOSITIONAL REVIEW

On appeal, counsel for petitioner thoroughly reviews the extended history of irregularities which characterize the Board's (later the Commission's) handling of Maslauskas' parole term on his 1967 federal sentence. Lodging a violator warrant as a detainer entitles the prisoner to a dispositional review within 180 days, 18 U.S.C. § 4214(b)(1) (1976). Here the Commission far exceeded this limit, but the appropriate relief is ordinarily to order that a dispositional review take place. The district court properly granted such relief.[13]

The district court applied a two-pronged test to determine whether to grant the *habeas* petition because of delay: first, whether the delay was unreasonable; and second, whether the delay was prejudicial to a legally protected interest. *Lambert v. Warden, United States Penitentiary,* 591 F.2d 4 (5th Cir. 1979). *See Smith v. United States* 577 F.2d 1025 (5th Cir. 1978); *Bryant v. Grinner,* 563 F.2d 871 (7th Cir. 1977); *United States ex rel. Sims v. Sielaff,* 563 F.2d 821 (7th Cir. 1977); *United States ex rel. Fitzpatrick v. United States Parole Commission,* 444 F.Supp. 1302 (M.D.Pa.1978).

In deciding whether the delay was prejudicial, the Court adopted the criteria established in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), with regard to delays in alleged violation of the Sixth Amendment guarantee to a speedy trial. *United States ex rel. Sims v. Sielaff, supra,* at 827-28.

■ Although holding that the delay in this case "weighs heavily" against the Commission, *Maslauskas v. United States Parole Board,* Civil No. 78–637 at 11 (M.D.Pa. May 17, 1979), the district court dismissed the petition for failure to show prejudice. While petitioner contests this finding, he entered guilty pleas to the state charges underlying the parole violator warrant.[14] Moreover, though Maslauskas alleged that he had exculpatory witnesses who have died, he does not state what they might have said or how their statements might have mitigated this admitted parole violation. We are limited on appeal to reviewing whether the trial court's finding is clearly erroneous; *United States ex rel. Marino v. Rundle,* 464 F.2d 149 (3d Cir. 1972). In our opinion it is not.

## III. THE SECOND PAROLE VIOLATOR WARRANT

■ The writ must issue, however, because under the governing statute and regulations, the Board of Parole was without authority to issue the second warrant. The applicable statutory provision, 18 U.S.C. § 4207 (1970), states that a "prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board" or a designee

---

12. Docket Entry No. 17, Affidavit at 2, Cir. No. 79 1845; Docket Entry No. 18, Exhibit 5 at 2, Cir. No. 79–2139.

13. In *Lambert v. Warden, United States Penitentiary,* 591 F.2d 4, 7–8 (5th Cir. 1979), the Fifth Circuit has suggested that if, at the expiration of the statutory period, a proper dispositional review has not been held, an action to compel compliance would be appropriate "coupled with appropriate sanctions against the non-complying officials." As petitioner has made no prayer for "appropriate sanctions," we do not reach this issue.

14. The Court need not comment on whether knowledge of an outstanding parole violator warrant affected by the disposition of the state charges was required for a constitutionally valid plea of guilty to the state drug charges except to note that since the warrant was based on violation of parole on the prior federal sentence, it would appear to have had no effect on the maximum sentence possible *under the state drug charges.*

thereof, and that the "Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof." Although this provision clearly gave the Board wide latitude whether and when to revoke parole, see, *Hyser v. Reed*, 318 F.2d 225 (D.C.Cir. 1963), *cert. denied*, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316 (1963), it did not include authority to order no revocation and then issue a second violator warrant contravening its own unabrogated order of the same date.

The governing regulation states:

> If a parolee or mandatory releasee violates any of the conditions under which he shall have been released, and satisfactory evidence thereof is presented to the Board, *a warrant* may be issued and the offender returned to an institution.

28 C.F.R. § 2.35 (1972) (emphasis added). This regulation contemplates execution for only one warrant for any given parole violation or violations.

In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court enumerated the Board's options upon retaking under the law applicable prior to passage of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201 *et seq.* (1976):

> (a) It could execute the warrant immediately and take the parolee into custody. . . . (b) [It could] dismiss the warrant and detainer altogether, which operated as a decision not to revoke parole . . . . (c) . . . the Board was free to defer a final decision on parole revocation until expiration of the subsequent sentence.

429 U.S. at 83–84, 97 S.Ct. at 277, 50 L.Ed.2d at 242. These options were mutually exclusive. That is, the Board had no authority to decide that Maslauskas' parole should not be revoked *and* to set in motion simultaneously a process leading to revoca-

tion six and one-half years later. Although Maslauskas had no due process right to notice of issuance of the second warrant until its execution, *Moody v. Daggett, supra, Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), neither had the Board the right to ignore the terms of its own order. The Board could not unqualifiedly order that the prisoner be released from custody and reinstated to parole supervision on a warrant which had been executed and simultaneously issue another warrant to be executed *in futuro.*[15]

We have found no case where a court has upheld the execution of a second warrant issued on the same grounds as one previously executed and disposed of by the Commission in favor of the prisoner. Some cases involve issuance of a second warrant or a warrant supplement on the basis of subsequent parole violations. *E. g., Johnson v. Holley*, 528 F.2d 116 (7th Cir. 1975); *United States ex rel. Davis v. Johnson*, 495 F.2d 335 (3d Cir. 1974), *cert. denied*, 419 U.S. 878, 95 S.Ct. 143, 42 L.Ed.2d 118 (1974); *Arrington v. McGruder*, 490 F.2d 795 (D.C. Cir. 1974); *Wright v. Blackwell*, 402 F.2d 489 (5th Cir. 1968); *Lipscomb v. Stevens*, 349 F.2d 997 (6th Cir. 1965), *cert. denied*, 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1965); *Brown v. Taylor*, 287 F.2d 334 (10th Cir. 1961), *cert. denied*, 366 U.S. 970, 81 S.Ct. 1933, 6 L.Ed.2d 1259 (1961). We have found only three cases in which a second warrant issued on the same grounds as the first. *Greene v. Michigan Department of Corrections*, 315 F.2d 546 (6th Cir. 1963); *United States ex rel. Hughes v. Ragen*, 154 F.2d 289 (7th Cir. 1946); *Smith v. Witkowski*, C.A. No. 77–3881 (N.D.Ill. December 21, 1979). But in all these cases, the first warrant had gone unexecuted. *See also, Wade v. United States Board of Parole*, 392 F.Supp. 327 (E.D.Wash.1975) (Court's ruling to quash warrant not to be construed to foreclose later reissuance of *un*executed

---

**15.** The March 22, 1972 order contained no qualifying language whatsoever. Thus, we need not face the question of whether the Board would have had the authority to issue a second warrant had its first order provided only for conditional reinstatement subject to reconsid-

eration following the disposition of the underlying state charges. Also, we need not consider whether the Board could have amended its March 22, 1972 order at some time before the expiration of the original parole term in April, 1973.

warrant). If, *prior to execution* of the first warrant against Maslauskas, a second one had issued to correct a procedural mistake, the result might be different.

The Commission cites two cases as authority for the issuance of the second warrant, *United States v. Cox*, 475 F.2d 837 (9th Cir. 1973) and *United States ex rel. LiPuma v. Gengler*, 411 F.Supp. 948 (S.D.N.Y.1976).[16] These cases hold that a warrant issued within a parole violator's original term of sentence may be executed thereafter. On the narrower issue of whether reissuance was permissible subsequent to execution of the first warrant, *LiPuma* is silent, and *Cox*, if anything, supports our view. In *Cox*, a search attendant to an arrest based upon improper execution of a parole violator warrant was held invalid. Execution of the warrant was held improper because it violated the terms of the accompanying attachment, which had instructed that the warrant be held in abeyance. In *Cox*, the warrant should not have been executed; in the instant case, it should never have been issued.

 Where the Commission is without authority to issue a warrant or supplement thereto, the warrant may be quashed. *See, Toomey v. Young*, 442 F.Supp. 387 (D.Conn. 1977), *aff'd per curiam*, 589 F.2d 123 (2d Cir. 1979). If such a warrant has already been executed, a writ of *habeas* will issue. Accordingly, dismissal of Maslauskas' petitions for writs of habeas corpus will be reversed and the case remanded with direction that the writs of habeas corpus issue.

**16.** The Commission's attempt to justify the second issuance demonstrates that petitioner's filings in the cases below and counsel's brief on appeal were sufficient to provide notice that the Commission's actions were being contested on this point. In the original *pro se habeas* petition and elsewhere, Maslauskas points out that the reinstatement order of March 22, 1972 made no mention that a new warrant had issued, and that under these circumstances, reissuance was improper. *E. g.*, Docket Entry No. 1, Argument at 2, Cir. No. 79–1845. *See also*, Docket Entry No. 27 at 3, Cir. No. 79–1845 (Commission concedes that one of petitioner's claims is that he was prejudiced by issuance of a second warrant). Thus, the Court's consideration on appeal is proper. *Cf., United States ex rel. Stukes v. Shovlin*, 464 F.2d 1211 (3d Cir. 1972); *United States ex rel. Bishop v. Rundle*, 437 F.2d 204 (3d Cir. 1971).