**Larry Dean TURNER,
Petitioner–Appellant,**

**v.**

**UNITED STATES PAROLE COMMISSION; Jack Cowley, Warden; Attorney General of the United States, Respondents–Appellees.**

No. 89–6341.

United States Court of Appeals,
Tenth Circuit.

May 24, 1991.

---

Vicki Mandell–King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, with her on the briefs), for petitioner-appellant.

Larry Dean Turner, Lexington, Okl., filed pro-se brief.

M. Kent Anderson, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty. and Vicki Zemp Behenna, Asst. U.S. Atty., with him on the brief), for respondents-appellees.

Before ANDERSON, BALDOCK and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The central issue in this case is whether the United States Parole Commission had authority to issue a second parole violator warrant based upon appellant's felony conviction in state court, when the Commission had previously executed a parole violator warrant, considered the underlying facts in the state charge, and had reinstated the appellant to supervision. The district court, in an able and detailed opinion, held that the Parole Commission properly issued the second warrant, and denied appellant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. We fully agree with the district court's analysis of the case, and affirm.

## BACKGROUND

Larry Turner was paroled on December 27, 1983, from a 15–year federal sentence for conspiracy and procuring another to commit perjury. On June 15, 1987, he was arrested and charged by Oklahoma state authorities with knowingly concealing stolen property. As a result of that charge, on July 2, 1987, the United States Parole Commission ("Parole Commission" or "Commission") issued a parole violator warrant, pursuant to 18 U.S.C. § 4213, charging Turner with knowingly concealing stolen property (a bulldozer), as well as failing to report his state arrest to his federal probation officer within two days of the arrest. United States Marshals executed the warrant on July 8, 1987. Turner was taken into federal custody and transferred to the federal facility at El Reno, Oklahoma. Parole revocation proceedings pursuant to 18 U.S.C. § 4214(a)(1)[1] followed.

On July 10, Turner's parole officer conducted a preliminary interview with Turner at F.C.I. El Reno and determined that there was probable cause to believe that Turner had violated the conditions of his parole. On July 28, 1987, Turner was notified by letter that the Parole Commission had found probable cause to believe that he had violated his conditions of parole, and a revocation hearing was ordered. The specific charges set forth against Turner were the state felony offense and Turner's failure to report his arrest on the offense. Turner was then ordered transferred to the F.C.I. Texarkana for purposes of the revocation hearing, as well as for confinement if his parole was revoked. On September 16, 1987, a Parole Commission hearing panel

---

1. 18 U.S.C. § 4214(a)(1) provides that, once retaken, an alleged parole violator must be accorded:

    (A) a preliminary hearing at or reasonably near the place of the alleged parole violation or arrest, without unnecessary delay, to determine if there is probable cause to believe that he has violated a condition of his parole; and upon a finding of probable cause a digest shall be prepared by the Commission setting forth in writing the factors considered and the reasons for the decision, a copy of which shall

be given to the parolee within a reasonable period of time....

    ...

    (B) upon a finding of probable cause under subparagraph (1)(A), a revocation hearing at or reasonably near the place of the alleged parole violation or arrest within sixty days of such determination of probable cause except that a revocation hearing may be held at the same time and place set for the preliminary hearing.

conducted a revocation hearing, even though the state charge was still pending.

The summary from the revocation hearing reflects that Turner appeared with counsel and testified in his own behalf. He admitted that he failed to report his arrest, but denied concealing stolen property. Following its review of the evidence, the panel found that Turner had violated his parole conditions by failing to report his arrest, but that the violation was insufficient to revoke parole. As to the felony charge, the panel concluded that, due to a number of inconsistencies in the testimony, there was "not sufficient evidence to support a preponderance finding." R.Vol. I, Tab 12, Exh. 9 at 7. The panel then recommended "that no decision be made on the knowingly concealing stolen property. It is recognized that this charge continues to be in limbo in state court and that additional information may be developed in form of a later conviction." *Id.* On October 5, 1987, the regional commissioner issued a Notice of Action stating that there was no finding sufficient for revocation and ordering Turner's reinstatement to parole forthwith. On the same date, the Parole Commission authorized the warden of the F.C.I. Texarkana to release Turner. He was released from federal custody on October 6, 1987 and taken into custody by state authorities.

The following month, Turner was tried and convicted in state court on the knowingly concealing stolen property charge, and was subsequently sentenced to 20 years in state prison as required by Oklahoma law relating to defendants who have prior convictions. The Parole Commission was notified of Turner's conviction on December 7, 1987. Based on that conviction, the Commission then issued a second parole violator warrant. The Commission directed the United States Marshal not to execute this warrant, but to place it as a detainer against Turner while he served his state court sentence, and assume his custody after he is released from that sentence. R.Vol. I, Tab 12, Exh. 16. After a dispositional record review on February 15, 1989, the Commission determined that the detainer should stand. R.Vol. I, Tab 12, Exh. 26.

Turner unsuccessfully appealed that determination, then filed this habeas action in the district court. Because of the substantial questions raised in Turner's petition, we authorized the appointment of the federal public defender to represent Turner on appeal. We have been furnished with an excellent brief by the public defender, and briefs by Turner as well.

■ The Parole Commission's decisions to grant or revoke parole will be reversed only if they are arbitrary, capricious or constitute an abuse of discretion. *Misasi v. United States Parole Comm'n*, 835 F.2d 754, 758 (10th Cir.1987). However, the question of whether a Parole Commission's action lies within the permissible scope of the Commission's authority is a question of law to be reviewed *de novo*. *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.1986) (review *de novo* where resolution of issue depends primarily on consideration of legal principles); *see Still v. United States Marshal*, 780 F.2d 848 (10th Cir.1985); *Maslauskas v. United States Bd. of Parole*, 639 F.2d 935 (3d Cir.1980). Our task is to interpret the statutory provisions and set aside the Commission's actions if, in light of the whole record, they are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C) (1977) (applicable to the Parole Commission under 18 U.S.C. § 4218(c)).

## DISCUSSION

The sole issue before us is whether the second warrant falls within the Parole Commission's statutory authority.

In 1976, Congress established the Parole Commission under the Parole Commission and Reorganization Act of 1976 ("Act"), 18 U.S.C. §§ 4201, et seq.,[2] and set forth the factors and procedures governing the parole of federal prisoners. Within these statutory constraints, Congress granted

**2.** 18 U.S.C. §§ 4201, et seq., were repealed, effective November 1, 1987, but continued in effect for five years after such date for those individuals, like Turner, who had been convicted of an offense before the effective date. Pub.L. No. 98–473, 98 Stat. 2027 (1984).

the Parole Commission wide, discretionary authority to grant or revoke parole. S.Rep. No. 369, 94th Cong., 2d Sess. 19 (1976), U.S.Code Cong. & Admin.News 1976, 335, 341 ("[parole] is a matter of administrative discretion"); *Wallace v. Christensen*, 802 F.2d 1539, 1544–46 (9th Cir.1986) (en banc); *Taylor v. United States Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir.1984); *Timpani v. Sizer*, 732 F.2d 1043, 1047 (2d Cir.1984); *Stroud v. United States Parole Comm'n*, 668 F.2d 843, 845–46 (5th Cir.1982); *see* 18 U.S.C. § 4206(c) (for good cause, Commission may grant or deny release notwithstanding statutory guidelines governing release); 18 U.S.C. §§ 4214(a)(1)(A), (d) (within Commission's discretion to determine which action to take after finding that parolee violated parole conditions).

The Act is silent as to the question of whether a second warrant may be issued on the same underlying violation of law for which a previous warrant has been executed and a revocation hearing has been held. Turner seizes on this silence as dispositive, contending that our decision in *Still v. United States Marshal*, 780 F.2d 848 (10th Cir.1985), establishes that the Commission is empowered to do only those acts expressly authorized by 18 U.S.C. §§ 4213 and 4214. We disagree.

In *Still*, a parole violator warrant was issued and executed, and a preliminary interview held at which the Parole Commission found probable cause that Still had violated his parole. Thereafter, the Commission attempted to withdraw the parole violator warrant and to hold the warrant in abeyance pending the outcome of state charges upon which the parole violator warrant was based.

The issue in *Still* was "whether the Commission may defer a parole revocation hearing by withdrawing a previously executed parole violator warrant." *Id.* at 851. We held that "the Commission exceeded its statutory authority in withdrawing the parole violator warrant and therefore delaying petitioner's revocation hearing...." *Id.* at 853. That holding was based upon the majority's view that once a parolee is retaken by virtue of the execution of the parole violator warrant, the Act's procedural requirements are triggered and must be observed. *Id.* at 851. This view finds its basis in the due process safeguards announced in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which were codified in the Act. In *Morrissey*, the Supreme Court held that a parolee may not be deprived of his conditional liberty through the execution of a parole violator warrant, without the basic due process safeguards of notice, prompt hearing, counsel, confrontation, and the opportunity to present evidence.

While *Still* stands for the proposition that once taken into custody a parolee is entitled to the hearing procedures provided under the Act, it does not address whether or not full scale proceedings in accordance with the Act may be instituted twice with respect to the same underlying state criminal charge. Turner argues that *Still* impliedly reaches that question by stating, in dicta:

> We believe that a restrictive reading of the Act is mandated by the well-established principle of statutory construction that, in the absence of clearly expressed legislative intent, a statute should be construed to avoid difficult constitutional issues. In our view, a broad construction of the Act would raise serious due process questions in light of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

*Still v. United States*, 780 F.2d at 851 (citations omitted).

Contrary to Turner's position, our general statement in *Still* with respect to interpretations of the statute does not, and cannot, attempt to establish a rule that the Parole Commission is powerless to do anything not explicitly spelled out in the Act. For example, as Judge Logan pointed out in his dissent in *Still*, there is no express provision in the parole statutes for delay of execution of an issued warrant. *Id.* at 854 (Logan, J., dissenting). Despite this, the Supreme Court in *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), expressly held that the Parole Commission

could issue a warrant against an incarcerated parole violator without executing it promptly and without triggering the right to a hearing. "The *Moody* Court held that the lack of an express provision in the statute and the general due process hearing rights found earlier for parolees in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), did not require a contrary decision." *Id.* (Logan, J., dissenting).

Nor, as Turner suggests, does *Maslauskas v. United States Bd. of Parole*, 639 F.2d 935 (3d Cir.1980), address this situation. In *Maslauskas*, on an executed warrant, the Board "unqualifiedly" ordered that the parolee be reinstated to parole. On the same day, however, the Commission issued a second warrant, identical to the first, and lodged a detainer following the parolee's plea of guilty and sentencing on state charges. The court held that the Commission was without authority to issue the second warrant, but acknowledged that it did not address the type of question presented here, i.e., "whether the Board would have had the authority to issue a second warrant had its first order provided only for conditional reinstatement subject to reconsideration following the disposition of the underlying state charge." *Maslauskas v. United States Bd. of Parole*, 639 F.2d at 939 n. 15. The panel, in this case, did condition Turner's reinstatement. At Turner's revocation hearing, the Parole Commission explicitly declined to make a decision on the alleged violation, stating that the facts were indeterminate as to Turner's knowing concealment of stolen property. The Commission then reinstated Turner to supervision pending the production of more conclusive evidence in the form of a state court conviction.[3]

■ Furthermore, in both *Still* and *Maslauskas*, no new evidence supported the issuance of a second warrant. Rather the second warrant was issued solely in anticipation of the trial court's verdict, on the same day as, or soon after, the withdrawal of the first warrant. In Turner's situation, however, the Commission issued the second warrant based on the new evidence of a state court conviction. The conviction alone established probable cause to issue a warrant. 18 U.S.C. § 4214(b)(1); S.Rep. No. 369, 94th Cong., 2d Sess. 26, U.S.Code Cong. & Admin.News 1976, 335, 348 ("By being *convicted* of a new offense, the parolee has violated the only mandatory parole condition.") (emphasis added). No provision in the Act indicates that the issuance of a warrant under § 4214(b)(1) is an alternative, rather than an additional, manner of proceeding when the parolee is charged with a criminal offense. Nor does any provision foreclose the possibility of issuing a new warrant upon the production of new persuasive evidence of a violation.

■ Turner also cites to the express options listed in 28 C.F.R. § 2.44(b)[4] as the exclusive authorization for proceeding on parole violation warrants. We disagree.

While the regulation explicitly grants authority to delay both the issuance and execution of the warrant for parolees charged with a crime, neither *requires* that the Commission take one of the listed actions. Rather, the provisions are permissive—the Commission "may" delay issuance of the warrant or issue it and then hold it in abeyance or place a detainer. *See Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). The enumerated options should not be read to limit the Parole

---

**3.** The absence of any specific, conditional statement in the Notice of Action reinstating Turner to supervision is not determinative of the terms of the reinstatement or the Commission's findings. The record, as a whole, indicates that Turner's reinstatement was conditional. *See* 5 U.S.C. § 706 (court shall review whole record in determining whether agency action is in excess of statutory authority).

**4.** The regulation states, in relevant part:

Issuance of a summons or warrant may be withheld until the frequency or seriousness of violations, in the opinion of the Commission, requires such issuance. In the case of any parolee charged with a criminal offense and awaiting disposition of the charge, issuance of a summons or warrant may be withheld, a warrant may be issued and held in abeyance, or a warrant may be issued and a detainer may be placed.
28 C.F.R. § 2.44(b).

Commission's discretion to take other necessary measures.

To determine whether the issuance of the second warrant falls within Congress's intended scope of authority, we must read the entire statute in light of its underlying purposes and policies. *See Wallace v. Christensen,* 802 F.2d 1539, 1544–46, 1550–52 (9th Cir.1986) (en banc); *Trailways, Inc. v. I.C.C.,* 727 F.2d 1284, 1289 (D.C.Cir. 1984).

Congress intended that the Commission exercise broad discretion utilizing a variety of tools to ensure that parole decisions are based on consideration of all relevant information. H.R.Conf.Rep. No. 838, 94th Cong., 2d Sess. 20, U.S.Code Cong. & Admin.News 1976, 335, 352. A parolee's conviction subsequent to release is an important, and arguably necessary, factor in determining whether to revoke parole. 18 U.S.C. § 4214(d); *Moody v. Daggett,* 429 U.S. at 89, 97 S.Ct. at 279 (parolee's recent convictions are one of the most salient factors in making final decision concerning parole revocation). Turner's interpretation prohibits the analysis of this important evidence in making a "prediction as to the ability of [Turner] to live in society without committing antisocial acts." *Morrissey v. Brewer,* 408 U.S. at 480, 92 S.Ct. at 2599, *quoted in Moody v. Daggett,* 429 U.S. at 89, 97 S.Ct. at 279.

Congress has clearly expressed its intent that the Commission should deny parole if a parolee's release would "jeopardize the public welfare." 18 U.S.C. § 4206(a)(2) (1976); S.Rep. No. 369, 94th Cong., 2d Sess. 23, U.S.Code Cong. & Admin.News 1976, 344 (release of prisoner on parole must be "compatible with the general welfare of society"); *id.* at 18–19, U.S.Code Cong. & Admin.News 1976, 339–341 (parole system requires a recognition of the "responsibility for the protection of the larger society"); H.R.Conf.Rep. No. 838, 94th Cong., 2d Sess. 20, U.S.Code Cong. & Admin.News 1976, 352 ("parole is the agency responsible for keeping in prison those who because of the need for accountability to society or for the protection of society must be retained in prison"). This major concern for public safety also underlies the Commission's authority to revoke parole.

To find for Turner would substantially impair the Commission's ability to effectuate its congressional mandate to protect the public by restricting its discretion in initiating revocation proceedings and precluding it from reviewing all relevant evidence in making its final decisions. Turner's interpretation would force the Commission to forego any action on an issued warrant until after the state trial in order to preserve its authority to consider revocation in light of the court's verdict. It would prevent the Commission from taking the necessary steps to review a parolee's conduct as "soon as practicable after discovery of the alleged violation," 18 U.S.C. § 4213(b), to determine whether continued parole, pending the state trial, would "jeopardize the public welfare." 18 U.S.C. § 4206(a); *see also* 18 U.S.C. § 4209(a).

In addition, such a restrictive interpretation would not generally benefit the parolee. Rather it would often work to prematurely, and perhaps unnecessarily, deprive the parolee of his liberty by forcing the Commission to resolve all doubts in favor of revocation at an early stage. Such a "restrictive approach would result in the revocation of parole in some situations in which later developments would bring about a different result." *Franklin v. Fenton,* 642 F.2d 760, 763 (3d Cir.1980). We decline to support a reading of the statute which would effectively deprive the Commission of its ability to protect the public and could also result in unnecessary deprivation of parolee's liberty.

Turner next contends that the Commission should disregard the state court conviction since certain evidence that the Commission viewed in its first revocation hearing was not presented to the jury, and the revocation hearing was, in essence, more fair than his trial. Specifically, Turner's counsel advised him not to testify at trial to avoid exposure of his prior criminal record, so the jury did not have Turner's version of the incident, whereas the Commission did.

The Commission need not look behind the face of the conviction itself to review the

evidence produced at trial or to determine the correctness of the jury's decision. We fully understand and sympathize with Turner's feeling that the state proceedings have dealt with him in an unusually harsh manner. However, those are questions for the state appellate courts.[5] The Commission may take the conviction on its face as evidence of Turner's violation of the conditions of his parole and review the conviction, along with all other relevant evidence Turner wishes to submit, including his testimony, in making an independent determination whether to revoke parole.[6] *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (permit Commission to consider events occurring after the issuance of the warrant); *see Franklin v. Fenton,* 642 F.2d at 762–63; *Thigpen v. United States Parole Comm'n,* 707 F.2d 973, 977 (7th Cir.1983).

■ Turner contended below, although he does not urge it on appeal, that double jeopardy, collateral estoppel and res judicata prevent the Parole Commission from holding two revocation hearings. However, "it is well-established that double jeopardy does not apply to substantially identical parole ... revocation hearings." *United States v. Marmolejo,* 915 F.2d 981, 983 (5th Cir.1990) (citing *Garcia v. United States,* 769 F.2d 697, 700 (11th Cir.1985); *Priore v. Nelson,* 626 F.2d 211, 217 (2d Cir.1980); *Thompson v. Reivitz,* 746 F.2d 397, 399–400 (7th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 849 (1985)). Nor do collateral estoppel or res judicata bar a second revocation hearing since, as the district court correctly

noted, "the arguments under these facts would be essentially the same as a double jeopardy argument." R. Tab 19 at 13–14; *see United States v. Miller,* 797 F.2d 336, 341 (6th Cir.1986); *Thompson v. Reivitz,* 746 F.2d at 400. Furthermore, Turner's argument fails because the Parole Commission panel never concluded the first hearing. Rather it reserved a final determination on revocation until after the state trial. Thus, there was no final judgment at the first hearing and the panel's refusal to revoke parole did not collaterally estop a future hearing on the same alleged acts.

Turner has also filed a motion to supplement the record on appeal. Since we do not find that the record would be benefited by additional information, we deny his motion.

## CONCLUSION

■ We hold that the Parole Commission has not exceeded its statutory authority in issuing a second parole violator warrant on the same underlying parole violation when, at the first revocation hearing, it made no conclusive finding on the violation and conditionally reinstated the parolee to supervision and where the second warrant was based on the new evidence of a state court conviction. The judgment of the district court is AFFIRMED.

---

5. Mr. Turner has pursued his claims of injustice in federal habeas corpus proceedings. We have recently concluded that no federal constitutional violations occurred in his state trial. *Turner v. Cowley,* No. 90–6296 (10th Cir., April ——, 1991) (unpub. op.).

6. Turner argues that the "fact of his conviction does not necessarily mean that the Commission should now make a finding of guilt.... [O]ther information known to the Commission should outweigh a finding of guilt in a state trial for purposes of parole revocation." Appellant's Brief at 16. This argument is premature. The Commission has not yet determined whether the parolee has indeed violated his parole. That

conclusion will result from the revocation hearing to be held after Turner's release from state prison. The Commission has made no indication that it will not review all the evidence, including Turner's testimony at that hearing, or that it will not reinstate Turner to supervision.

Turner also contends that he should not be forced to serve his parole term in installments. This, too, is not ripe for adjudication since Turner's parole may not be revoked and he may never have to serve additional federal time. *See Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (court will review only actual controversies of "sufficient immediacy and reality").