Willie **BENNETT**, Petitioner–Appellant,

v.

**J.B. BOGAN, Warden, Respondent–Appellee.**

No. 94–1931.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1995.

Decided Oct. 5, 1995.

Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges; HEYBURN, District Judge.[*]

JOHN G. HEYBURN II, District Judge.

Petitioner, Willie Bennett, appeals the district court's decision to deny his writ of *habeas corpus,* and alleges that the Parole Commission exceeded its statutory authority and denied him due process by conditionally withdrawing an executed parole violator warrant pending the outcome of underlying state criminal charges, and later executing another warrant based largely on the same conduct. Petitioner also alleges that the Parole Commission's five and one-half year delay between the time it decided to issue the second warrant and the time it decided to execute the warrant, violated his Sixth Amendment right to a speedy trial and his Fifth Amendment right to due process of law. Although this case raises serious questions about the propriety of the Government's lack of diligence in pursuing Petitioner's parole revocation, we nonetheless affirm the district court's decision not to grant the writ.

I.

On August 25, 1980, the United States District Court for the District of New Jersey sentenced Petitioner to eight years imprisonment and five years special parole for a controlled substance offense. The State of New Jersey also sentenced Petitioner to serve two to four years consecutively with his federal sentence. Pursuant to an appeal bond, the State of New Jersey paroled Petitioner on February 26, 1982. Almost one year later, a New Jersey court of appeals affirmed Petitioner's conviction and Petitioner surrendered to the State of New Jersey in March of 1983. After he served approximately one month, the State reduced Petitioner's sentence to probation.

[*] The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

In the fall of 1984, New Jersey police twice arrested Petitioner for drug trafficking, which led the United States Parole Commission to issue a parole violator warrant for Petitioner on December 26, 1984. On January 15, 1985, the Commission executed the warrant and federal agents took Petitioner into custody. On May 23, 1985, Petitioner was given a local revocation hearing concerning his parole violation charges in New York. After the hearing, the Parole Commission reinstated him to supervision and withdrew the parole violator warrant. Federal authorities then released Petitioner to the custody of the State of New York so that he could face extradition to New Jersey. The State of New York returned Petitioner to the State of New Jersey, which arraigned Petitioner on charges arising from his two arrests in 1984 and released him on bond.

In late 1986, Petitioner began to suffer severe medical problems that required his hospitalization. During that time, Petitioner's federal parole officer, Joseph Napurano, permitted Petitioner to report by telephone. After he realized that his medical condition would require expensive, life-threatening surgery, Petitioner entered into a plea bargain with the State of New Jersey that he believed would require his state sentence to be served concurrently with any federal or state probation violation sentence and thereby permit him to undergo his operation while in custody at a federal facility.

On February 17, 1987, four and one-half years after his arrest, Petitioner pleaded guilty in New Jersey Superior Court to two counts of possession of controlled substances with intent to distribute. Unfortunately for Petitioner, on April 24, 1987, his federal parole officer informed him that the United States Parole Commission would not agree to concurrent sentences. On May 8, 1987, the Essex County Court sentenced Petitioner to two concurrent three-year terms for his state offenses and ordered Petitioner to surrender to state authorities within sixty days if he were not yet in federal custody.

On July 7, 1987, the Parole Commission issued a second parole violator warrant, which charged Petitioner with the same conduct alleged in the first parole violator warrant and added a new charge for failure to report to his parole officer. The Parole Commission instructed the United States Marshal's Office to delay the warrant and to await further instructions because Petitioner was "awaiting trial or sentencing" on a new case. Petitioner's federal parole file became inactive and Petitioner was not subject to active supervision after that time.

At the end of July, Essex County issued a bench warrant for Petitioner's arrest. Two months later, Petitioner's federal parole officer checked with state authorities and verified that a warrant existed for Petitioner. In June of 1988, the Parole Commission sent a memorandum to the United States Marshal in Newark, New Jersey, inquiring about the status of the warrant. One month later, the Marshal's office replied that Petitioner was a fugitive from local custody. The warrant remained inactive at the Commission's request.

In November of 1988, Petitioner's federal parole officer informed the Parole Commission that Petitioner still was not in state custody. The Parole Commission did not activate its warrant or direct the U.S. Marshal's Office in New Jersey to take custody of Petitioner until mid-September of 1992, however. Furthermore, the U.S. Marshals did not execute the warrant and take Petitioner into custody until February of 1993. Between the time he entered his state court plea in 1987, until his arrest in 1993, Petitioner lived with his wife in Irvington, New Jersey. He filed tax returns that listed his home address, received mail at that address, and held a New Jersey driver's license that bore that address.

On May 6, 1993, Petitioner appeared for a parole revocation hearing at Federal Corrections Institution Milan in Michigan. On May 20, 1993, the Parole Commission issued a Notice of Action that revoked Petitioner's parole, denied him credit for the time he spent on parole, and ordered him to remain in custody until his presumptive parole date on December 27, 1995.

In July of 1993, Petitioner filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District

of Michigan. Several months later, Magistrate Judge Paul J. Komives issued a Report and Recommendation in which he recommended that most of Petitioner's claims be denied but recommended that counsel be appointed and an evidentiary hearing conducted on Petitioner's fourth claim entitled "(A) Issuance and execution of a warrant, (B) Statute of Limitations[,]" which arose from the five and one-half year delay between the issuance and execution of Petitioner's federal parole violator warrant. Magistrate Judge Komives noted that Petitioner had raised a "constitutional issue similar to that resolved in favor of a complaining defendant in *Doggett v. United States,*" 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)(holding that a person's Sixth Amendment right to a speedy trial is violated if the government, through "inexcusable neglect" waits eight years between indictment and arrest). The district court entered an Order that adopted Magistrate Judge Komives's Report and Recommendation.

On May 24, 1994, Magistrate Komives held an evidentiary hearing that addressed Petitioner's allegations in his fourth claim for relief. As a result of the hearing, Magistrate Judge Komives recommended that the petition be denied. In August 1994, the district court entered an Order accepting Magistrate Judge Komives's Report and Recommendation, denying the Petition for Writ of *Habeas Corpus,* and dismissing the case.

## II.

This case requires us to consider first whether the Parole Commission exceeded its statutory authority under 18 U.S.C. § 4214(d) (1976) and violated Petitioner's due process rights when it conditionally withdrew an executed parole violator warrant pending the outcome of underlying state charges, and later issued and executed a second warrant alleging substantially the same charges. If the second warrant was validly issued, we must next ask whether the Parole Commission violated Petitioner's Sixth Amendment right to a speedy trial or his Fifth Amendment right to due process by executing the second parole violator warrant five and one-half years after its issuance.

## A.

■ The propriety of the Parole Commission's decision to withdraw conditionally Petitioner's executed parole violation warrant and then later issue a second warrant based on substantially the same charges is governed in part by The Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218 (1976) (the "Act"), which codified parole laws until it was repealed on November 1, 1987. The Act requires that the Parole Commission issue a summons or warrant for a parole violation "as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary." 18 U.S.C. § 4213(b) (1976). The Act further notes that "[i]mprisonment in an institution shall not be deemed grounds for delay of such issuance, except that in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge." *Id.*

Pursuant to 18 U.S.C. § 4214 a parolee is entitled to certain procedural rights before the Parole Commission may modify parole after a summons is issued or a parolee is retaken. After the Parole Commission holds a revocation hearing and finds that a parolee violated a condition of parole, the Commission may

(1) restore the parolee to supervision;

(2) reprimand the parolee;

(3) modify the parolee's condition of the parole;

(4) refer the parolee to a residential community treatment center for all or part of the remainder of his original sentence;

(5) formally revoke parole or release as if on parole pursuant to this title.

18 U.S.C. § 4214(d).

The Act does not explicitly authorize the Parole Commission to issue and execute a warrant, but then withdraw the warrant and reinstate the parolee to supervision pending the resolution of the state charges underlying the warrant. The Sixth Circuit has not addressed the issue of whether the Commission may act outside the scope of the post-revoca-

tion hearing options specifically outlined in 18 U.S.C. § 4214(d). However, several other courts have considered this issue and the results are instructive.

One of the first cases to address the issue was *Maslauskas v. United States Bd. of Parole,* in which the court held that the Parole Board[1] could not decide not to revoke parole and yet simultaneously issue a new warrant leading to a later parole revocation, because the Board's post-arrest statutory options were exhaustive. 639 F.2d 935, 939 (3rd Cir.1980)(citing 18 U.S.C. § 4205 (1972)). After the 1976 Act became effective, the Third Circuit altered its interpretation of the statute. In *Franklin v. Fenton,* the court interpreted the parole statutes to permit reissuance of a withdrawn warrant. 642 F.2d 760, 763 (3rd Cir.1980). In doing so, the court decided that the 1976 Act's list of statutory options regarding parole revocation was not exhaustive, because of the new Act's policy of promoting deferral of revocation hearings pending the disposition of underlying charges. *Id.* (noting that 18 U.S.C. § 4213(b) states that "in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge"). As support for its holding, the court relied heavily on *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), which held that a parolee's liberty is not affected until his parole violation warrant is executed, and therefore permitted the Commission to issue a parole violator warrant but postpone the execution and revocation hearing until after the parolee served his sentence for the underlying conviction.

The Seventh Circuit concluded that the Parole Commission has the authority to issue and execute a parole violator warrant, hold a revocation hearing, and then hold the warrant in abeyance pending the resolution of underlying state criminal charges. *Thigpen v. United States Parole Comm'n,* 707 F.2d 973 (7th Cir.1983). The *Thigpen* court reiterated *Franklin's* logic and held that "the Act ... embodies a clear policy permitting the Commission to defer even setting the procedural scheme in motion pending the

outcome of state charges which support the parole revocation action." *Id.* at 976 (citing 18 U.S.C. § 4213(b)). It thus did not distinguish between deferring a parole revocation hearing before or after execution of a warrant, although 18 U.S.C. § 4213(b) only explicitly allows suspension of the issuance of a warrant. The court also relied on *Moody,* 429 U.S. 78, 90, 97 S.Ct. 274, 280, 50 L.Ed.2d 236, which allowed postponement of a revocation hearing when an alleged parole violator was serving a jail term on the underlying conviction. In addition, the court accepted the "conditional" nature of the petitioner's reinstatement to supervision, rejecting Thigpen's argument that his reinstatement was "final" under 18 U.S.C. § 4114. The court decided that the conditional reinstatement "wiped clean" any procedural errors in the first hearing. For all these reasons, the court denied the petition for habeas corpus.

The Tenth Circuit also addressed the issue of re-execution of warrants. In *Still v. United States Marshal,* the court held that the Parole Commission may not withdraw an executed parole violator warrant for which a revocation hearing has not been held, and hold it in abeyance pending the disposition of the underlying state charges. 780 F.2d 848, 852 (10th Cir.1985). The court acknowledged that the Act is silent on the issue of whether the Commission may defer a revocation hearing in this manner. *Id.* at 851. It found, however, that 18 U.S.C. § 4213(b) permits the Commission to suspend *issuance* of a warrant, but does not mention suspension of the warrant after it has been issued. *Id.* Moreover, the court viewed withdrawal of a warrant as different from suspension. *Id.* at 851–52. In addition, the court applied a restrictive interpretation of the Act, and indicated that a more liberal interpretation might infringe upon the procedural rights outlined in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *Id.* at 851.

The *Still* court tried to undermine *Thigpen* and *Franklin.* It observed that they were based on a policy permitting the Commission to consider all relevant information before acting on a warrant, a policy that the court

---

1. The Parole Commission was named the Parole    Board prior to the enactment of the 1976 Act.

viewed as insufficient to justify the withdrawal of warrants. *Id.* at 852. The *Still* court observed that the Commission could wait to execute warrants if it anticipated any reason to delay a revocation hearing. *Id.* Moreover, the court believed that delayed hearings could harm parolees by causing them to lose the benefit of serving state sentences concurrent with revocation sentences. *Id.* Finally, the *Still* court indicated that *Franklin* was ill-conceived in light of *Maslauskas*'s observation that the parole regulations contemplated the issuance of only one warrant. *Id.* at 853.

Nevertheless, after its finding in *Still* that the Commission could not withdraw an executed warrant on which a hearing has not been held, and reissue another on the same grounds, the Tenth Circuit applied the *Franklin–Thigpen* reasoning in the more recent opinion of *Turner v. United States Parole Comm'n,* 934 F.2d 254 (10th Cir.), *cert. denied,* 502 U.S. 885, 112 S.Ct. 239, 116 L.Ed.2d 195 (1991), in which the court carefully avoided a conflict with *Still.* In *Turner,* the petitioner was arrested on state charges while on federal parole, and a parole violator warrant was issued and executed. Unlike the facts in *Still,* however, the petitioner received a revocation hearing. Because the hearing panel found insufficient evidence to justify revocation, it reinstated supervision, but acknowledged that state charges were pending and might solidify a later finding that the violation occurred. After the petitioner was convicted of the state charges, the Commission issued a new warrant and lodged it as a detainer against the petitioner who was then serving a state sentence.

The Tenth Circuit denied *habeas* relief on the petitioner's claim that the Commission lacked authority to issue the second warrant. *Id.* at 260. The court distinguished *Still* by stating that

> [w]hile *Still* stands for the proposition that once taken into custody a parolee is entitled to the hearing procedures provided under the Act, it does not address whether or not full scale proceedings in accordance with the Act may be instituted twice with respect to the same underlying state criminal charge.

*Id.* at 257. As long as a parolee receives the revocation hearing to which he is entitled under *Morrissey* and the Act, *Turner* holds that a warrant may be withdrawn and reissued. *Id.* at 260.

In contrast to *Still*'s reasoning, the *Turner* court interpreted the Act to give the Commission wide discretion, and insisted that the Act's silence on the permissibility of a second warrant should not be interpreted to mean that the Commission lacks authority to issue a second warrant. *Id.* at 258–59. Rather, to determine whether the Commission has authority to issue a second warrant, the court reviewed the underlying policies of the Act, which include protecting the public welfare and ensuring that the Commission considers all relevant information about a parolee, including subsequent convictions. *Id.* at 259. Prohibiting the issuance of a second warrant after conditional release on supervised status, the court believed, would prevent the Commission from executing a warrant early unless it was sure the evidence would support a violation, because the Commission might anticipate that a later conviction would better support a violation. *Id.* Moreover, the *Turner* court determined that if it did not permit re-execution of the warrant after a hearing, the Commission might resolve doubts in favor of incarceration if execution occurred before resolution of the underlying charges. *Id.*

From all of this we find that several pertinent factors emerge as significant to the courts that have addressed this issue. First, the Commission should *conditionally* withdraw a warrant if it wants to retain the option of issuing a second warrant on the same conduct. Second, it is important that the Commission hold a revocation hearing on a first executed warrant before withdrawing it. In this case, the Commission conditionally reinstated Petitioner's supervised status, pending the resolution of his New Jersey charges. Moreover, Petitioner received a revocation hearing. We choose to apply the reasoning of *Turner, Franklin,* and *Thigpen,* so that the Commission has some limited discretion to act on a warrant outside the

strict language of 18 U.S.C. § 4214(d). In these circumstances, therefore, we find that the second warrant was valid.[2] Petitioner's right to due process of law was not violated when the Parole Commission reissued a second warrant based on substantially the same charges as the first.

### B.

We must next concern ourselves with the possibility that Petitioner's constitutional rights were violated by the five and one-half year delay between the Parole Commission's issuance of the second warrant and its execution. Petitioner argues that the Commission infringed upon his Sixth Amendment right to a speedy trial and his Fifth Amendment right to due process of law. The Court will consider each argument in turn.

■ At first blush, it would appear that a five and one-half year delay between a warrant's issuance and its execution would violate one's right to a speedy trial. Unfortunately for Petitioner, it does not. Although *Doggett v. United States*, 505 U.S. 647, 654–655, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992), states that the Sixth Amendment's protection applies to "formal criminal prosecution[s,]" *Morrissey v. Brewer*, 408 U.S. at 480, 92 S.Ct. at 2599–2600, holds that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocation." Consequently, although the lengthy delay between the issuance and execution of the second warrant for Petitioner's arrest is lamentable, it does not rise to the level of intolerable.

The Commission did not, therefore, violate Petitioner's right to a speedy trial.

■ Whether the Parole Commission violated Petitioner's right to due process by its delay is a far thornier issue. Due process protections apply to parole revocation proceedings because one has a liberty interest in parole. *Morrissey*, 408 U.S. at 482, 92 S.Ct. at 2601. The Supreme Court has held, however, that "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 481, 92 S.Ct. at 2600. In *Moody v. Daggett*, the Court held that the Parole Commission did not deprive a Petitioner of due process when it waited until the end of the petitioner's state sentence on the underlying convictions to execute a parole violator warrant and hold a hearing. 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236. The Supreme Court has never addressed the specific issue in this case, namely whether the Commission constitutionally may wait to execute a warrant if the parolee is not yet serving his state sentence, however.

■ Although the Sixth Circuit has not addressed this issue either, at least one other Circuit decided that a delay between the issuance and execution of a parole violator warrant does not violate the parolee's due process rights, unless the Commission sought a tactical advantage or the parolee was prejudiced. In *Gaddy v. Michael*, a Fourth Circuit, pre-1976 Act case, the court noted in *dicta* that fundamental fairness required a warrant to be executed "with reasonable dispatch[,]" but also noted that "[t]o entitle the parolee to relief, the delay, taking into consideration all the circumstances, must be unreasonable; it must also be prejudicial." 519 F.2d 669, 672–73 (1975).

---

**2.** Petitioner cites *Donn v. Baer*, 828 F.2d 487 (8th Cir.1987), relying on its observance that the Act does not explicitly permit the Commission to withdraw and re-execute warrants. However, Petitioner misstates *Donn* as holding that the "Commission was not authorized to withdraw the executed parole warrant based on pendency of new criminal charges." Appellant's Br. At 11. In *Donn*, the petitioner committed state offenses while on federal parole, and a parole violator warrant was issued and lodged as a detainer with the state prison. The warrant was withdrawn *after* the petitioner had pleaded guilty to

the state charges, unlike *Franklin* and *Thigpen* in which executed warrants were withdrawn *pending* the resolution of underlying state charges. *Donn* found that the Commission should not have the flexibility to delay revocation hearings when it knew the outcome of state charges when it executed the warrant. Thus, Bennett erred by stating that *Donn* does not permit the withdrawal of warrants when criminal charges are pending; *Donn* only forbids withdrawal of warrants if charges are resolved upon execution. Moreover, in *Donn*, the petitioner never received a revocation hearing as Bennett did. *Id.* at 490.

Had the Commission exercised greater diligence in the pursuit of its duties, Petitioner could have paid his debt to society and returned to his community unencumbered. Instead, Petitioner was returned to federal custody to serve his time after he re-established ties to his neighborhood and pursued gainful, legal employment for several years.

Despite the appeal of this argument, the court observed that a parolee is not prejudicially harmed by the delay in establishing his parole violation when the violation is "conclusively established" by the criminal conviction that is the basis for the warrant. *Id.* at 678. On at least one official document, Petitioner indicated his desire and intent to return to his home in New Jersey and attempt to secure employment through his family. Since Petitioner held a New Jersey driver's license with his correct address and filed tax returns with the same address, the government's failure to locate Petitioner borders on inexcusable neglect. The impropriety of the government's actions is mitigated only by Petitioner's failure to fulfill his own obligations. Because Petitioner failed to report to his probation officer and failed to remind the State of New Jersey that he was required to serve a state sentence, he is in part responsible for the delayed execution of the warrant. His lack of diligence, although more than understandable, precludes him from complaining that the Commission's delay constituted inexcusable neglect.

For the reasons stated above, this court will affirm the District Court for the Eastern District of Michigan's decision to deny Petitioner's writ of *habeas corpus*.