NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0204n.06

No. 09-2508

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EDWARD O'NEAL BOWEN,                    )
                                        )
        Petitioner-Appellant,           )
                                        )
v.                                      )    ON  APPEAL  FROM  THE
                                        )    UNITED  STATES  DISTRICT
KURT JONES, Warden,                     )    COURT  FOR  THE  EASTERN
                                        )    DISTRICT OF MICHIGAN
        Respondent-Appellee.            )

FILED

**Feb 22, 2012**

LEONARD GREEN, Clerk

Before:        BOGGS, ROGERS, and SUTTON, Circuit Judges.

        BOGGS, Circuit Judge.  The assault Edward O'Neal Bowen committed was brutal. His original sentence in Michigan state court was not: five years of probation, with the first year to be served in jail.  When Bowen violated probation, however, the gravity of his initial crime caught up with him, and he received a sentence of twenty-two to thirty-five years of imprisonment. Although his habeas petition followed a tortuous path through the federal courts, this case presents us with three relatively simple questions: (1) did an eight-month delay between the issuance of bench warrants for probation violations and Bowen's probation-revocation hearing violate his due-process rights; (2) did Bowen's counsel perform ineffectively at his probation-revocation hearing; and (3) did his appellate counsel perform ineffectively by failing to raise the first two issues.  Because the answer to each of these questions is a clear 'no,' we affirm the judgment of the district court, denying Bowen's habeas petition.

I

Bowen committed robbery. But that was only the beginning. After he took the money that he planned to steal, he turned on the person he had forced to open the safe (at knife-point), and—without cause or provocation—stabbed him at least three times in the head with a butcher's knife. It is not clear whether Bowen also kicked the victim's head as he crawled toward a telephone. The victim's injuries included "compound depressed skull fractures, multiple deep scalp lacerations, deep puncture wounds in the skull . . . [and] a loss of frontal lobe function."

Bowen pleaded no contest to a charge of assault with intent to murder in September 1993. In accordance with his plea deal, the trial court sentenced him to five years of probation, with the first year to be served in jail. On January 10, 1996, Bowen tested positive for marijuana. This positive test was a violation of the terms of his probation. His probation officer informed him of the test results on January 19, 1996, while he was in jail on retail-fraud charges. Because of the positive drug test and the pending charges, the probation department informed Bowen on January 22, 1996 that he was required to report to probation daily. He did so until February 26, when he failed to report.

What happened next is not entirely clear from the record. Bowen was incarcerated in various Michigan facilities from May 1996 to October 1996, while awaiting trial on charges of retail fraud and filing a false police report. But the record does not explain Bowen's whereabouts between February 1996, when he failed to report for probation, and May 1996, when he was arrested. However, Bowen did send letters to his probation officer from Cincinnati, Ohio, dated March 11, 1996, even though the terms of his probation did not allow him to leave the state of Michigan.

In any event, a bench warrant was issued on February 15, 1996, alleging that Bowen violated the terms of his probation by using marijuana, failing to pay restitution, and engaging in new criminal conduct. Another bench warrant was issued on February 29, 1996, alleging that Bowen violated probation by failing to report to his probation officer daily. After an eight-month delay, a Michigan trial court arraigned Bowen on the warrants.

Bowen retained counsel on October 29, 1996. One day later, the trial court held a probation-revocation hearing. Counsel did not ask for a continuance. At the hearing, three probation officers—two from Genesse County and one from Kalamazoo County—testified. The urine sample indicating that Bowen used marijuana, however, was no longer available, nor had Bowen asked for, or been given, the opportunity to test that sample earlier or to submit to another drug test contemporaneously. Counsel argued, on this basis, that Bowen could not adequately defend himself against the positive marijuana test. Bowen did not testify on his own behalf. Nor did he present evidence to contradict the probation officers' testimony. At the conclusion of the hearing, the court found that Bowen used marijuana, failed to pay restitution, and failed to report. It sentenced Bowen to a term of twenty-two to thirty-five years of imprisonment on November 21, 1996.

Bowen filed a direct appeal, claiming: (1) "The lack of due diligence throughout the proceedings leading to defendant's arrest and probation violation hearing and the events surrounding the alleged probation violations failed to accord defendant minimum due process"; (2) "Defendant's twenty-two to thirty-five year sentence for a probation violation was disproportionate, because although within the appropriate sentence guidelines for the underlying offense, it marked a severe departure from the original sentence of five year's [sic] probation"; and (3) "Because defendant's

sentence was based at least in part on considerations violative of his constitutional rights, resentencing before a different judge is required." The Michigan Court of Appeals affirmed Bowen's sentence, and the Michigan Supreme Court denied Bowen's application for leave to appeal.

On March 16, 1999, Bowen filed a timely Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Michigan. He alleged that he was deprived of due process because: (1) he did not have enough of an opportunity to cross-examine witnesses about the validity of the marijuana-positive urine samples; (2) he did not receive "reasonably diligent" notice of the alleged probation violations; and (3) the evidence presented in the revocation hearing was not sufficient to justify the district court's finding that he violated probation. The district court denied Bowen's petition, and this court denied his application for a certificate of appealability.

Bowen next filed a Motion for Relief from Judgment in Michigan state court, pursuant to Michigan Court Rule 6.500, raising four claims: (1) counsel was ineffective at his probation revocation hearing; (2) the trial judge, in determining that he was guilty of violating probation, used the fact that he invoked his right not to testify against him; (3) the revocation hearing was fundamentally unfair; and (4) appellate counsel was ineffective and undermined his appeal. The Michigan trial court denied the motion. It specifically addressed Bowen's ineffective-assistance claims from the bench, in a discussion covering approximately twelve pages of transcript. After explaining the principles of *Strickland* and of relevant Michigan ineffective-assistance case law, the court concluded: "Defendant has not established that his current situation is in anyway [sic] related

to the performance of trial counsel or appellate counsel." The Michigan Court of Appeals and Supreme Court both denied Bowen's application for leave to appeal.

On February 17, 2004, Bowen filed another Petition for Writ of Habeas Corpus, this time in the United States District Court for the Western District of Michigan, claiming that he received ineffective assistance of trial and appellate counsel. *In re Bowen*, 436 F.3d 699, 701 (6th Cir. 2006). District Judge McKeague (as he was then) transferred the case to this court as a second or successive petition. We determined that Bowen's petition was not second or successive because he could not have brought the ineffective-assistance claims he then sought to pursue in an earlier proceeding, and remanded. *Id.* at 701–06. On remand, District Judge Bell again determined that the petition was second or successive, claiming that he could not apply all aspects of this court's *In re Bowen* decision in a logically consistent fashion. He again transferred the case to this court. *Bowen v. Jones*, No. 1:04-CV-107, 2006 WL 374503, at \*2 (W.D. Mich. Feb. 16, 2006). Again, we concluded that the petition was not second or successive and remanded. On this second remand, the district court appointed counsel, and granted Bowen's motion to transfer the case to the Eastern District of Michigan.

After receiving supplemental briefing, the district court determined that none of Bowen's claims entitled him to habeas relief. As relevant here, it reasoned, first, that the Michigan Court of Appeals's conclusion that Bowen did not suffer a deprivation of due process because of delay between the issuance of the bench warrants and the probation-revocation hearing was not contrary to, or an unreasonable application of, Supreme Court precedent. The district court reached the same conclusion about each of Bowen's ineffective-assistance claims, and declined to issue a

certificate of appealability as to any of Bowen's grounds for relief. This court, however, granted

Bowen's application for a certificate of appealability on the three claims presented here.

II

At the outset, the parties disagree about the applicable standard of review. Under §

2254(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

The Michigan state courts, at one time or another, adjudicated each of Bowen's

claims on the merits. First, the Michigan Court of Appeals decided that the State's handling of the

urine sample did not deprive Bowen of due process. Bowen does not dispute this, and so appears

to concede that he must satisfy § 2254(d)'s requirements to succeed on that claim. What Bowen

does argue, however, is that the state courts never resolved his ineffective-assistance claims on the

merits, and thus those claims are not subject to the strictures of § 2254(d). Bowen is wrong. As

discussed above, a state trial judge considered those claims in detail, and held that Bowen did not

suffer ineffective assistance of probation-hearing or appellate counsel. AEDPA deference applies.

To succeed on any of his claims, therefore, Bowen must show that the state-court decisions were contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that the state court made a decision based on an unreasonable determination of facts, in light of the evidence presented in state court.

III

"Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). "Probationers have an obvious interest in retaining their conditional liberty" while on probation. *Black v. Romano*, 471 U.S. 606, 610 (1985). Accordingly, "[t]he Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Id.* at 610.

At minimum, a probationer facing revocation must receive:

(a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

*Gagnon*, 411 U.S. at 786 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). "The [final] revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *Morrissey*, 408 U.S. at 488; *Gagnon*, 411 U.S. at 782 ("Accordingly, we hold that a probationer, like

a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer*.").

Thus, as of 1998, when the Michigan Court of Appeals decided Bowen's due-process claim, the Supreme Court had determined that probation revocation implicates the Due Process Clause and that the state must provide a reasonably timely probation-revocation hearing. *Gagnon*, 411 U.S. 778. The Court, however, had not—and still has not—defined the contours of timeliness with precision. In the absence of binding Supreme Court precedent, lower federal courts outside of our circuit have taken a number of different approaches to determining whether a delay in probation-revocation proceedings violates a defendant's due-process rights. Some hold "that a due process violation occurs only when the petitioner establishes that the Commission's delay in holding a revocation hearing was both unreasonable and prejudicial," *Camacho v. White*, 918 F.2d 74, 79 (9th Cir. 1990) (internal quotations and alterations omitted) (collecting cases); others look to the "somewhat analogous context of the Sixth Amendment right to speedy trial," and use the *Barker v. Wingo*, 407 U.S. 514, 530 (1972), balancing test, *United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989) (quoting *United States v. Companion*, 545 F.2d 308, 311 (2d Cir. 1976)), still others treat an already-approved period of delay—three months, for instance—as a measuring stick and determine timeliness on an *ad hoc* basis. *Rivera v. United States*, No. 93-2787, 25 F.3d 1053, 1994 WL 198784, at *3 (7th Cir. May 20, 1994).

Our court, in *Bennett v. Bogan*, 66 F.3d 812, 818 (6th Cir. 1995), took a path similar to the *Camacho* court's, holding that "a delay between the issuance and execution of a parole violator warrant does not violate the parolee's due process rights, unless the Commission sought a

tactical advantage or the parolee was prejudiced." *Ibid*. Although *Bogan* dealt with a due-process challenge in the parole-revocation context, it is also the proper standard here because probationers and parolees are entitled to revocation hearings, subject to the same conditions, *Gagnon*, 411 U.S. at 782.[1]

The Michigan Court of Appeals, applying Michigan law, adopted an approach similar to that of the *Camacho* and *Bogan* courts, requiring that a petitioner show both unreasonableness (or intentional delay) and prejudice. The Michigan court held that the delay in executing the warrants did not stem from the State's lack of due diligence, and that Bowen did not show that he suffered prejudice as a result of the delay. As to the marijuana test, the Court of Appeals held that the probation officer's testimony that Bowen's urine tested positive for marijuana, along with Bowen's admission that "he had smoked a blunt," was sufficient to establish a probation violation. Thus, the court reasoned, Bowen did not suffer a violation of his due-process rights.

Neither we, nor the district court, may disturb this state-court holding unless it was so unreasonable that no "fairminded jurist[]" could have reached it. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This is a high

---

[1] We note that the district court improperly applied the balancing test applicable to speedy-trial claims under the Sixth Amendment. *See Barker*, 407 U.S. at 530; *Lyons v. Ohio Adult Parole Authority*, No. 96-3489, 1998 WL 124039, at *3 (6th Cir. March 12, 1998) (applying *Barker* to determine whether delay in holding parole revocation hearing was reasonable). The district court cited *Lyons* in support of its approach. R. 37 at 7–8. *Lyons*, however, assumed without explanation that *Barker* applies to parole-revocation proceedings. *Bogan*, a binding opinion of this court, counsels a different approach. *Bogan*, 66 F.3d at 818. The district court, therefore, should have applied *Bogan*, not *Lyons*, to resolve Bowen's claim. As discussed below, however, this error does not affect the outcome of the case.

standard. "A state court must be granted a deference and latitude that are not in operation" on direct review. *Id.* at 785. Accordingly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. Rather, to succeed on a habeas claim already considered in state court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

Bowen argues that he meets this high standard because the eight-month delay prevented him from challenging the results of his marijuana test effectively. This argument ignores the fact that Bowen also committed two other probation violations. More importantly, it ignores the reason the sentencing judge imposed such a harsh sentence. The judge showed little concern for the nature of Bowen's parole violations. Rather, he focused on the nature of the underlying assault. "But now," he began, "let's talk about the crime, that's the thing that's troublesome." He went on: "I think [Bowen is] a terrible danger to society. I think he's a man who has psychological problems, deep psychological problems. . . . This is not a man who deserves the sort of sympathy that he would expect or anticipate should be given." Bowen's crime, the judge continued, was

> violence on a person that is dramatically different than I've seen any other violence inflicted. I've seen shootings, but they're instantaneous. But to constantly stab a victim in the head with a butcher knife and leave him there, for all you know, for dead after you achieved your goal of getting money from the safe, got everything you wanted. Why couldn't you go away and let the man simply be there? But no, that's not what he did.

The judge summed up: "I've made up my mind this is a situation that requires some sort of sentence that's tailored to your particular circumstance, Mr. Bowen."

In light of this record, it is difficult to believe, as Bowen argues, that the court "likely impos[ed] a lengthier sentence than it would have if Mr. Bowen had been able to successfully challenge the positive urine sample." Appellant's Br. at 18. The Michigan Court of Appeals, applying a standard similar to the Sixth and Ninth Circuits' standards in an unclear area of law, required that Bowen show prejudice to maintain his due-process claim. The record amply justifies the holding that Bowen suffered no prejudice from the eight-month delay, even if that delay meant that he could not challenge the positive marijuana sample.

In sum, the Michigan Court of Appeals's legal standard was not contrary to, or an unreasonable application of, federal law, and its application of the facts to that standard was not unreasonable, in light of the evidence presented in state court. *See* 28 U.S.C. 2254(d). Bowen's first claim fails.

IV

Bowen's two remaining claims are that he received ineffective assistance of counsel at his probation hearing because counsel did not request a continuance so he could better challenge the marijuana-positive urine sample, and that he received ineffective assistance of counsel during his direct appeal because counsel did not raise the other two claims raised in this appeal. The same general framework applies to both arguments. To establish ineffective assistance of counsel, a petitioner must show: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984).

Counsel performs deficiently when he makes "errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "When

a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. Courts deciding whether counsel's representation was objectively unreasonable "must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Accordingly, to succeed on an ineffective-assistance challenge, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A

The state judge who considered Bowen's Motion for Relief from Judgment, after a thorough explanation of the principles governing ineffective-assistance claims, held:

> [I]f you give defendant his claims with respect to the marijuana, which I'm not prepared to do, but for the sake of argument if you give him those claims . . . if you give him all that he is claiming, he never addresses other issues that also resulted in a violation of his probation. What I am leading up to is that defendant cannot satisfy the requirement that the result reached in his probation revocation hearing was unreliable. Therefore, even if you assume that errors were made and that counsel's performance was deficient, it would not have impacted the outcome; and because it would not have impacted the outcome, the result is not a result that is unreliable; it is a result that is reliable. . . . I am prepared to find that, number one, defendant

- 12 -

> has failed to establish ineffective assistance of counsel; and, more importantly, assuming my finding in that regard is incorrect, defendant has failed to establish prejudicial effect, because the results in this case given all the evidence are reliable.

R. 28-2 at 32–33 (hearing on Motion for Relief from Judgment).

We may only disturb this ruling if it was so contrary to, or such an unreasonable application of, clearly established federal law that no "fairminded jurist[]" could have reached the same conclusion. *Harrington*, 131 S. Ct. at 786. Bowen suggests that he meets this standard because, first, counsel failed sufficiently to investigate the positive marijuana test, Appellant's Br. at 19, and, second, because "[h]ad counsel requested an adjournment and engaged in investigation of the alleged positive marijuana test, there is a reasonable probability that the court would have imposed a lesser sentence." *Id.* at 21.

"[T]his Court has generally afforded counsel great deference with regard to requesting continuances," even though failure to do so can constitute a violation of the "obligation to conduct a thorough investigation of potential mitigating evidence." *Jells v. Mitchell*, 538 F.3d 478, 496–97 (6th Cir. 2008). Furthermore, Bowen's decision to abscond in February 1996, rather than to challenge his positive marijuana test at that time, is chargeable to him. In other words, Bowen bears at least some responsibility for the dearth of remaining physical evidence of his marijuana test.

But even if, like the state court, we assume that Bowen's lawyer made an objectively unreasonable decision not to request a continuance, Bowen is still not entitled to relief. As discussed extensively above, the sentencing court was not concerned with *how* Bowen violated probation. *See supra* Part III. Rather, it focused on the nature of Bowen's underlying crime. The conclusion, in

light of this record, that Bowen's proceeding would have come out the same way, had counsel succeeded in challenging the marijuana-positive urine sample, was not so unreasonable that all "fairminded jurists" would have concluded otherwise. *Harrington*, 131 S. Ct. at 786. Bowen's probation-hearing ineffective-assistance claim fails.

B

After denying Bowen's claim that he received ineffective assistance of counsel at his probation hearing, the state judge considered Bowen's ineffective-assistance-of-appellate-counsel claim. He first explained that the Michigan courts consider ineffective-assistance claims in the appellate context under the *Strickland* standard. Then, he held: "given that the issues raised by defendant in his motion for relief from judgment are not sufficient to carry a reversal of his situation, it is not ineffective assistance of appellate counsel to fail to raise those issues."

As was the case with Bowen's other claims, we may reverse this decision only if no "fairminded jurist[]" could have reached the same conclusion as the state court. *Harrington*, 131 S. Ct. at 786. Bowen acknowledges that "[e]ffective advocacy does not require an appellate attorney to raise every non-frivolous issue available." Appellant's Br. at 21. He argues, however, that counsel's performance was objectively unreasonable because counsel "failed to challenge the revocation of Mr. Bowen's probation on the basis that he was deprived of due process and received constitutionally ineffective assistance of counsel at his probation hearing." *Id.* at 22. This failure, he claims, caused him prejudice because "had appellate counsel raised the due process and ineffective assistance of counsel violations on appeal, there is a reasonable probability that the

Michigan Court of Appeals would have determined that Petitioner Bowen was entitled to a rehearing on his probation violations." *Ibid.*

This argument fails. First, appellate counsel did make a due-process challenge to the outcome of Bowen's probation hearing, on both procedural and sufficiency-of-the-evidence grounds. *See* R. 29 at 1 (Michigan Court of Appeals Opinion) ("Defendant's primary claim on appeal is that his due process rights were violated by the manner in which the violation of probation charges were instituted and heard."), *id.* at 2 ("Finally, defendant challenges the sufficiency of the evidence regarding his use of marijuana."). But more fundamentally, Bowen has not shown prejudice within the meaning of *Strickland*. As discussed above, and as the state court held, none of Bowen's claims would have entitled him to relief. Thus, he cannot "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, much less that the state court's holding was so unreasonable that no "fairminded jurist[]" would come to the same conclusion. *Harrington*, 131 S. Ct. at 786.

V

None of Bowen's claims entitle him to relief. We AFFIRM.